## Alexandria

CHESAPEAKE & POTOMAC TELEPHONE COMPANY

v.

ARCHIE S. WILLIAMS

No. 0329-89-3

Decided June 19, 1990

COUNSEL

Eric J. Berghold (William L. Carey; Miles & Stockbridge, on brief), for appellant.

Peter C. Burnett (Burnett & Williams, on brief), for appellee.

OPINION

**BAKER, J.**—Chesapeake & Potomac Telephone Company (C&P) appeals from an Industrial Commission (commission) decision which awarded Archie S. Williams (claimant) temporary total compensation due to mesothelioma caused by exposure to asbestos while claimant was employed by C&P. The award of $344 per week equals two-thirds of the average weekly wage that claimant earned during the last year of his employment with C&P. C&P asserts that the commission should have based the award on an average weekly wage of $215.73, the amount that claimant was earning while working for Frederick County Electric Company (FCE). We disagree and affirm the commission's award.

In determining its award, the commission construed Code § 65.1-6 to require that it use the wages earned during the fifty-

two weeks claimant was last actually exposed to asbestos by his employment with C&P. The commission placed particular importance on the phrase "time of injury" in Code § 65.1-6, the statute that defines average weekly wages, as contrasted to the phrase "injury by accident" in Code § 65.1-49, the statute of limitations section for occupational diseases. The commission reasoned that the General Assembly purposely used the phrase "time of injury" to mean that the award should reflect the wages at the time of exposure and actual injury. Thus, the commission ruled that the time of injury for purposes of the average weekly wage is different than the date of injury for the purposes of the statute of limitations, as provided in Code § 65.1-49.

On appeal, C&P argues that the commission erred since the Workers' Compensation Act should be read as a whole. Thus, it asserts, Code §§ 65.1-6 and 65.1-49, when read in conjunction, mandate that the wages the claimant was earning at FCE form the average weekly wage since those were his wages at the time and date of the injury as fixed by the statutes. Additionally, C&P asserts that the commission incorrectly determined that claimant's average weekly wage while employed for C&P most nearly approximated the wages that claimant would be earning if he had not been exposed to asbestos, since the purpose of the Act is to cover the future earnings. We agree with the holding of the commission.

The facts are not in dispute. Claimant worked for C&P for thirty-five years, during which time he was repeatedly exposed to asbestos. The average weekly wage of his last fifty-two weeks of employment with C&P was $585. After his retirement from C&P, claimant worked as a regular, part-time electrician for FCE at an average weekly wage of $215.73. Claimant worked only thirty-five of the fifty-two weeks immediately preceding the termination of his employment with FCE, which occurred shortly before he was diagnosed as having mesothelioma.[1] The disease was determined to be causally related to his exposure to asbestos during the course of his employment with C&P and C&P treated the claim as compensable. *See* Code § 65.1-50.

The date on which the diagnosis of an occupational disease is made and first communicated to the employee is treated as

---

[1] Mesothelioma is a form of cancer caused by exposure to asbestos.

the date of injury and as the happening of an injury by accident. The rights and liabilities of the parties vest and accrue on that date. *See* Code § 65.1-49; *Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 9-10, 365 S.E.2d 782, 787 (1988). The date of communication of the disease has been selected as the *date of the injury* for statute of limitations purposes because occupational diseases develop over time into compensable injuries and claimants cannot point to a single date as the date on which they were injured. *Cooper v. Mary E. Coal Corp.*, 215 Va. 806, 808, 214 S.E.2d 162, 164 (1975). Neither the statute nor *Cooper* require that the date of the diagnosis and communication determines the period which will be used to calculate average weekly earnings.

 Code § 65.1-6(A)(1) provides that, "[u]nless the context otherwise requires, 'average weekly wages' means the earnings of the injured employee *in the employment* in which he was working *at the time of injury* during the period of fifty-two weeks immediately preceding the date of injury, divided by fifty-two. . . ." (emphasis supplied). The Workers' Compensation Act has always been liberally construed for the benefit of employees and their dependents. *Byrd v. Stonega Coke & Coal Co.*, 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944); *Race Fork Coal Co. v. Turner*, 5 Va. App. 350, 354, 363 S.E.2d 423, 425 (1987), *rev'd on other grounds*, 237 Va. 639, 379 S.E.2d 341 (1989). Applying that rule to Code §§ 65.1-49 and 65.1-52, we find that in enacting those code sections the legislature intended that the phrases "injury by accident" and "date of injury" be used to determine when a claimant's right to assert a claim begins and the time limit within which the application for benefits must be filed with the commission. However, we find that by using the phrase "in the employment in which he was working at the time of his injury" in Code § 65.1-6, the legislature intended that the average weekly wage award be based upon the wages received from the employment where the employee was exposed to the element which caused the occupational disease for which claim is made.

 Regardless of any subsequent wages earned by claimant under the facts of this case, whether they be more or less than the wages as computed here, the disease contracted as a result of claimant's thirty-five-year employment with C&P is the cause of his loss of earning capacity and probable death. "The reason for calculating average weekly wage is to approximate the *economic*

loss suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death." *Bosworth v. 7-Up Distributing Co.*, 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987). In the absence of evidence to the contrary, the economic loss caused by claimant's occupational disease only can be determined by calculating the wages claimant earned at the place which caused the injury.[2] No such contrary evidence is disclosed by this record. Therefore, we hold that the language used in Code § 65.1-6(A)(1) as applied to the facts of this case refers to the last day of the employment which exposed claimant to asbestos.

For the reasons stated, the commission correctly concluded that claimant in this case was entitled to receive compensation based on his average weekly wage for the last fifty-two weeks of his employment with C&P. Accordingly, the judgment of the commission is affirmed.

*Affirmed.*

Coleman, J., and Duff, J., concurred.

---

[2] Code § 65.1-6 contains language which gives the commission some latitude to determine what method will be used to "most nearly approximate the amount which the injured employee would be earning were it not for the injury" or death.