409 S.E.2d 21 (1991)
Joseph Hugh CAMPBELL
v.
COMMONWEALTH of Virginia.
Record No. 1048-90-1.
Court of Appeals of Virginia.
September 10, 1991.
Rehearing En Banc Granted October 30, 1991.
*22 Wayne Lustig, Norfolk (Anthony F. Troy, Richmond, Alan D. Albert, and William P. Robinson, Jr., Mays & Valentine; Robinson, Zaleski & Lindsey, on briefs), Norfolk, for appellant.
Robert Q. Harris, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BENTON, COLEMAN and MOON, JJ.
MOON, Judge.
Joseph H. Campbell, appellant, seeks reversal of his conviction of forging a public record in violation of Code § 18.2-168. He alleges that the trial court erred in refusing to instruct the jury that the crime had to be "to the prejudice of another" or to the gain of the defendant, and incorrectly defined "intent to defraud" in a jury instruction. We hold that "to the prejudice of another" is not an element of the offense of forging a public document. Because appellant did not object in the trial court for the same reasons as he does on appeal to the instruction regarding the definition of "intent to defraud," he is barred from raising that issue on appeal. Accordingly, we affirm.
On appeal, we construe the evidence in the light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).
Appellant was a judge in the traffic division of the General District Court of the City of Norfolk. On March 20, 1989, Paul A. Sciortino, Commonwealth's Attorney for the City of Virginia Beach, was given a ticket by a Norfolk police officer for making an improper turn. Mr. Sciortino was involved in a political re-election campaign *23 and, because of prior bad publicity from a traffic accident, he did not wish this charge to be a matter of public record.
Mr. Sciortino and his attorney, Andrew Ege, met with Judge Campbell in chambers. Judge Campbell had been Commonwealth's Attorney in the City of Norfolk and had known Sciortino many years. During the meeting, Mr. Ege jokingly suggested that the case be dismissed. Judge Campbell mentioned the usual disposition in such cases was a fine of fifty dollars and asked whether that was "acceptable." Mr. Ege and Sciortino indicated that it would be acceptable. Mr. Ege then asked, "[D]oes it have to appear on the docket, can we leave it off the docket?" Judge Campbell said that "it has to appear on the docket." Mr. Ege then asked, "[W]ell, if his name is misspelled you don't have to correct it, do you?" Judge Campbell responded, in what he testified was a "jokingly or light-hearted manner," that "there are a lot of clerical errors."
Immediately after the meeting in chambers, Mr. Sciortino paid the fifty dollar fine and costs to the clerk. A short time later, Judge Campbell went over to a deputy clerk who was seated at a computer terminal which maintained the official records of the general district court. He directed her to bring up the record of Mr. Sciortino's case and she did so. He then told her to "scramble or jumble" the letters of Mr. Sciortino's last name. The clerk changed the spelling from "Sciortino" to "Schortinoe" and asked the judge, "[H]ow is that?" Judge Campbell then told her to switch the first and middle names and the clerk changed the entry from "Paul A." to "Anthony Paul." Judge Campbell remarked that Mr. Sciortino was "scared to death about this accident because Paul thinks the newspaper is going to crucify him again, and they probably will."
Judge Campbell testified that his instructions to change the name had been a joke and had been misinterpreted by the clerk as a direction to change the name on the computer records. The deputy clerk who made the change, as well as two other clerks who were present, testified that the instructions were not given in a joking manner but were stated in a manner consistent with an instruction to change the records.
Based upon this evidence, the jury returned a verdict of guilty to the charge of forgery and fixed the sentence at six years imprisonment.[1]
The appellant argues that his conviction cannot stand because the jury was not instructed to find that his conduct was "to the prejudice of another's rights in property or some other tangible thing" and because the jury was not instructed to find that Judge Campbell possessed a specific intent to cause "actual, tangible loss" to another or "actual, tangible gain to himself."
The pertinent plain language of Code § 18.2-168 provides:
If any person forge a public record ... he shall be guilty of a Class 4 felony.
Code § 18.2-168 is the first of seven statutes in the "forgery" article of the criminal code. Specific statutes address forging a public seal, Code § 18.2-169; forging coins, bank notes or currency, Code § 18.2-170; possession of instruments for forging a writing, Code § 18.2-171; falsifying transcripts and diplomas, Code § 18.2-172.1; and possession of forged coins or bank notes, Code § 18.2-173.
Of all of the statutes, only Code § 18.2-172 provides the requirement that the writing be "to the prejudice of another's right." It provides:
If any person forge any writing, other than such as is mentioned in Code §§ 18.2-168 and 18.2-170, to the prejudice of another's right ... he shall be guilty of a Class 5 felony.
Appellant argues that forgery is and always has been a common law crime even in the case of public records. Code § 18.2-168, appellant alleges, does not abolish the *24 common law but explicitly invokes it, as is clear both from its very terms and from long standing Virginia rules of statutory construction. Appellant concedes that the elements of forgery are as follows: (1) The false making or material alteration; (2) with intent to defraud; (3) of a writing; (4) which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability, or operate to the prejudice of another man's right. See, e.g., Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984); Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964), cert. denied, 382 U.S. 927, 86 S.Ct. 310, 15 L.Ed.2d 341 (1966); Ramsey v. Commonwealth, 2 Va.App. 265, 269, 343 S.E.2d 465, 468 (1986).

I.
Appellant argues that Virginia courts have consistently reiterated the requirement of harm or prejudice with regard to the crime of forgery. Appellant cites Virginia statutes as early as 1819 and the case of Commonwealth v. Linton, 4 Va. (2 Va. Cas.) 476 (1825), which held "the rule is, that the false making and forging any instrument, whereby another may be injured, constitutes the offense of forgery." Id. at 478. However, the history of forgery of public documents makes clear that "to the prejudice of another's right" is not an element of the offense.
The forgery statute in effect in 1819 (Va.Code § 154 embodied forms of forgery including those now separated into different statutes) reveals that the only type of forgery requiring proof of "prejudice of another" were those dealing with forgery of writings other than those specifically listed. Included among those types of forgeries specifically listed in Va.Code § 154 (1819), i.e. those which did not require proof of "to the prejudice of another's right," were the forgeries of "any record of any court, or public office, or any body politic or corporate." Thus, even in 1819 "to the prejudice of another's right" was not considered an element of the offense of forging public documents. The Supreme Court so held in Murry v. Commonwealth, 32 Va. (5 Leigh) 720 (1835).
Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of interpretation. Virginia Dept. of Labor v. Westmoreland Coal Co., 233 Va. 97, 99, 353 S.E.2d 758, 760 (1987). When the General Assembly uses different terms in the same act, it is presumed to mean different things. Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987). Thus, the intention may primarily be discerned from the language of the statute. "In construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of other statutes relating to the same subject matter." Robert Bunts Eng'g & Equip. Co. v. Palmer, 169 Va. 206, 209-10, 192 S.E. 789, 790-91 (1937).
In considering the seven statutes dealing with the forgery, the language "to the prejudice of another's right" appears only in Code § 18.2-172 and that statute expressly excludes Code § 18.2-168, which criminalizes the forging of public documents. Therefore, we hold that the legislature did not intend that the "prejudice to another's right" requirement be in any other sections. It is readily apparent that violation of any of the forgery statutes other than Code § 18.2-172 is an offense against the public in general or, as in this case, the government itself.
Furthermore, Virginia case law has never associated the element of "prejudice of another" with the crime of forgery of public documents. See Va.Code § 154 (1819) (where a single statute embodied those crimes which now appear as seven statutes, Code §§ 18.2-168 to 18.2-173). Code § 154 (1819) specifically set forth in plain and unambiguous language the definition of the various crimes. Under that statute, it was clear that the language "to the prejudice of another's right" was applied only to personal papers and not public documents.
While the arrangement of the statutes regarding forgery in Virginia has varied, the scheme by which they are written *25 has not. At all times the predicate of the crime of forgery has been some type of document or writing. Our statutes specifically list certain documents which are the subject of forgery. This list is not exclusive. There is a catch-all provision by which other writings not specifically listed may serve as a predicate to the crime of forgery. To serve this purpose, however, the writings must have the potential to operate "to the prejudice of another's right." Code § 18.2-172; see also Gordon v. Commonwealth, 100 Va. 825, 830, 41 S.E. 746, 748 (1902) ("It is only necessary, according to the foregoing definitions and authorities, that it was a writing of such apparent legal efficacy that the forgery of it might have been used to the prejudice of another's rights"). This interpretation is borne out through case law as demonstrated by Murry v. Commonwealth, 32 Va. (5 Leigh) 720 (1835)).
As to the objection, that the indictment does not charge the act to have been committed "to the prejudice of another's right;" we are of the opinion, that these words relate, not to the different writings particularly mentioned in the previous part of the section, the counterfeiting of most of which had, long before, been made felony; but only to the words immediately connected with them; "any other writing, to the prejudice of another's right."
Id. at 723.
Murry supports the interpretation that the words "to the prejudice of another's right" do not apply to those types of forgeries specifically listed in the code but only to forgeries of "other writings" not specifically listed.
[I]t is urged that the omission of the averment, "to the prejudice of another's right," is a defect so material that it may be taken advantage of after verdict.... It is said that these terms import a part of the description of the offence denounced in the statute; and that according to well settled rules of pleading they cannot be omitted. I think these words are not intended to be descriptive of the offence, but of the writings of which forgery may be committed. The first and third sections of the act specify various writings by name or general description, the forgery of which is made felony; and the fifth section [which parallels the language of Code § 18.2-172] makes the forgery of any writing, other than those mentioned in the first and third sections, "to the prejudice of another's right," in like manner felony: thus discriminating between those writings which might affect the rights of others whereof forgery might be committed, and other writings, by which, whether false or genuine, the pecuniary interest of others could not be affected.... That these words, "to the prejudice of another's right," refer to the writings contemplated by the statute, and not to the act of the party, is, I think, sufficiently establish by Hendrick's Case, 5 Leigh 707, and Murry's Case, Ibid 720; in neither of which did the indictment contain that particular expression, though it is found in the act of 1819, on which those prosecutions were founded.
Powell v. Commonwealth, 52 Va. (11 Gratt.) 822, 824-25 (1854) (emphasis added).
As the forgery of a public record is specifically listed as a writing or document which serves as a predicate to the offense of forgery, as codified in Code § 18.2-168, it need not be considered under the catchall provision of Code § 18.2-172 which addresses "other writings." The words "to the prejudice of another's right" are only employed in cases involving writings other than those specifically listed as predicates to the offense of forgery. In the context of "other writings," the words "to the prejudice of another's rights" serve to distinguish "between those writings which might affect the rights of others whereof forgery might be committed, and other writings, by which, whether false or genuine, the pecuniary interests of others could not be affected." Powell, 52 Va. (11 Gratt.) at 825.

II.
Instruction No. Eight told the jury:
To act with the intent to defraud means to act with an evil intent, or with *26 the specific intent to deceive or trick. It is sufficient if it was the intention of the defendant to frustrate the administration of a law or if his actions were prejudicial to, or a fraud upon, a commonwealth or a governmental unit or tended to impair a governmental function.
The first sentence correctly defined "intent to defraud." However, the second sentence, in part, equated actions conducted with the intent to defraud with actions that "tended to impair a governmental function." The second sentence was in the disjunctive and, therefore, a fair reading would instruct that intent to defraud is proven if the appellant's actions, irrespective of intent, tended to impair a governmental function. This interpretation of the instruction constitutes an incorrect statement of the law because it rules out mens rea as an element of the offense. Clearly, mens rea remains an element of all forgery, even of public documents. See Hanbury v. Commonwealth, 203 Va. 182, 187, 122 S.E.2d 911, 914-15 (1961).
However, appellant did not raise this objection at trial. Appellant's sole objection to the granting of Instruction No. Eight stated: "Again, on the grounds that it fails to point out that intent to defraud means to deprive under the circumstances of this case one of tangible rights." Thus, the objection in the trial court was not the same objection as is raised on appeal. An objection and reason therefor must be raised at the time the instruction is granted; otherwise, it is barred from being raised on appeal, except as may be necessary to meet the ends of justice. Rule 5A:18. Furthermore, the reasons stated for the objection in the trial court must be the same reasons that are argued on appeal. See Gardner v. Commonwealth, 3 Va.App. 418, 350 S.E.2d 229 (1986).
Appellant argues that under the ends of justice exception, we should reverse the case notwithstanding the failure to make the proper objection in the trial court.
The Supreme Court in Jimenez v. Commonwealth, 241 Va. 244, 402 S.E.2d 678 (1991), discussed the ends of justice exception as applied to jury instructions and the sufficiency of the evidence. In Jimenez, an essential element defining the crime was left out of the instruction. Moreover, no evidence was introduced to prove the element. The Supreme Court found that Jimenez had been convicted of a crime of which the Commonwealth's own evidence showed he was not guilty. Id. at 250-251, 402 S.E.2d at 681 (citing Ball v. Commonwealth, 221 Va. 754, 273 S.E.2d 790 (1981)).
In Jimenez, the Supreme Court stated that "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Id. at 251, 402 S.E.2d at 681 (citing Bryant v. Commonwealth, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975); Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)). In Bryant and Whaley, the defense offered an instruction embodying a principle of law upon which they relied but their instructions were "argumentative, confusing and intentionally misleading," or otherwise improperly drawn. See Bryant, 216 Va. at 392, 219 S.E.2d at 671; Whaley, 214 Va. at 354-55, 200 S.E.2d at 557-58. In both cases, the defendants sought to have their position on the law embodied in a jury instruction. The principles of law contained in the instructions were correct as applied to the facts, but the instructions were wrong for other reasons. Rather than correcting the instructions and giving them with a correct statement of law, the trial judges simply refused the instruction and the case went to the jury without any instruction on the principle of law.
Here, the appellant did not offer an instruction on the principle of law that was incorrectly stated to the jury by the Commonwealth's instruction but acquiesced in the Commonwealth's instruction to the extent it is now in question.
We have held that the ends of justice do not require that an argument be entertained on appeal unless there has been an obvious miscarriage of justice. Mounce v. Commonwealth, 4 Va.App. 433, 357 S.E.2d 742, 744 (1987). We must determine *27 whether a miscarriage of justice obviously occurred or might have occurred. Here, no obvious miscarriage of justice occurred. The evidence is overwhelming of the defendant's intent to alter a public document with the intent to deceive. Moreover, contrary to Jimenez, an abundance of evidence was offered proving the element concerning the defendant's criminal intent. In fact, an examination of the record reveals that it would have been difficult for a rational trier of fact to have reached any other conclusion than that appellant intended that the record be altered. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Accordingly, on the facts of this case, we are not required to waive the bar of Rule 5A:18 to achieve the ends of justice.
Therefore, the judgment appealed from is affirmed.
Affirmed.
BENTON, Judge, dissenting.
The majority and I agree that instruction number eight contains an incorrect statement of the law. The majority concludes that because Joseph Hugh Campbell's attorneys failed to object to the defective instruction, Rule 5A:18 bars our consideration of that issue.[2] I believe that the "ends of justice" exception to the Rule must be invoked and, further, that the error in giving the instruction was not harmless. Therefore, I dissent.
"[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). That duty arises even when "trial counsel neglected to object to the instruction." Id. at 248, 402 S.E.2d at 679. Obviously, the proper description of the elements of the offense was vital to the defendant. Instruction number eight was so defective that it allowed the jury to convict Campbell of forgery even if the jury concluded that Campbell lacked an intent to defraud. Intent to defraud, however, is a necessary element of forgery. Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984).
[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proofdefined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (emphasis added). The jury cannot be said to have reached the level of certitude constitutionally required to convict when the jury was instructed that non-criminal conduct was sufficient to satisfy a mens rea element of the offense.
Unless [the appropriate] elements are defined by instructions available to the members of the jury during their deliberation, they cannot properly determine whether the Commonwealth has carried its burden.... "It is always the duty of the court at the proper time to instruct the jury on all principles of law applicable to the pleadings and the evidence (emphasis added)", and "a correct statement of the law applicable to the case, when the law is stated, ... [is one of the] essentials of a fair trial".
Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) (citations omitted); see also Darnell v. Commonwealth, 6 Va.App. 485, 488, 370 S.E.2d 717, 719 (1988).
The misstatement of law relieved the Commonwealth of its burden to prove criminal intent because the trial judge improperly informed the jury that it could convict Campbell even if the jury found that Campbell lacked the requisite mens rea. Thus, the jury could have believed Campbell's defensethat he had no intent to defraud because his statement to the clerk who changed the record was only intended as a *28 jokeand yet convicted him by finding that his conduct "tended to impair a governmental function." This occurrence deprived Campbell of the process that he was due.
"There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending valueas a criminal defendant his libertythis margin of error is reduced as to him by the process of placing on the other party the burden of ... persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt."
In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (quoting Speiser v. Randall, 357 U.S. 513, 525-26, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)). This doctrine, which is the cornerstone of our system of criminal justice, "requires more than simply a trial ritual." Jackson, 443 U.S. at 316-17, 99 S.Ct. at 2788.
In Brown v. Commonwealth, 8 Va.App. 126, 380 S.E.2d 8 (1989), this Court emphasized that "[a]lthough the ends of justice exception is narrow and is to be used sparingly, [the Court will not place] too restrictive an interpretation upon Mounce [v. Commonwealth, 4 Va.App. 433, 357 S.E.2d 742 (1987)]." Id. at 132, 380 S.E.2d at 11. Specifically, the Court explained:
The language in Mounce that to avail himself of the rule the defendant had to affirmatively show [that] "a miscarriage of justice [has] occurred, not ... that a miscarriage might have occurred" requires that the error be clear, substantial and material.
Id. (emphasis in original). Unquestionably, the error in instructing this jury meets that standard. No amount of sophistry can eliminate the possibility that the jury believed the defense testimony, rationally applied the facts, as believed, to the incorrectly drawn instruction, and convicted Campbell.
The resolution of this dilemma is not found in weighing this hypothesis of innocence against the quantum of proof that the Commonwealth offered in support of guilt. If the jury believed the testimony of Campbell, as it was entitled to do, the quantum of contrary evidence was irrelevant.
Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness.
"The credibility of witnesses is a question exclusively for the jury, and where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the evidence as equally balanced, they have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly."
Goodyear Tire & Rubber Co. v. Pierce, 5 Va.App. 374, 381, 363 S.E.2d 433, 437 (1987) (quoting Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949)).
The assertion that there was "an abundance of evidence" or that the "evidence is overwhelmingly" of Campbell's guilt is not a sufficient basis upon which to deprive Campbell of his right to a jury trial. Campbell is entitled to have a jury trial in which "`the law has been clearly stated [to the jury] and ... the instructions cover all issues which the evidence fairly raises.'" Darnell, 6 Va.App. at 488, 370 S.E.2d at 719. A fundamental hallmark of a fair trial is that "`instructions ... should inform the jury as to the law of the case applicable to the facts in such a manner that [the jury] may not be misled.'" Cooper v. Commonwealth, 2 Va.App. 497, 500, 345 S.E.2d 775, 777 (1986).
The Commonwealth is not entitled to a directed verdict on appeal when the trial judge erroneously instructs the jury as to an essential and necessary element of the charged offense. Our inquiry is not whether *29 "it would have been difficult for a rational trier of fact to have reached any other conclusion," but whether "the error did not affect the verdict." Lavinder v. Commonwealth, ___ Va.App. ____, ____, 407 S.E.2d 910, 911 (1991). If we give effect to the presumption that a jury follows the trial judge's instructions, LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984), it is not appropriate for this Court to affirm a conviction when the jury could have based its decision on otherwise legally innocent behavior. Where the error relates not to the jury's consideration of improperly admitted evidence, but to a jury's legally improper application and consideration of wholly proper evidence, it cannot be said that the erroneous instruction "did not affect the verdict," Lavinder, ___ Va.App. at ____, 407 S.E.2d at 911, or that Campbell received "a fair trial on the merits and [that] substantial justice has been reached," Code § 8.01-678. "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the `essentials of a fair trial.'" Darnell, 6 Va.App. at 488, 370 S.E.2d at 719 (quoting Dowdy, 220 Va. at 116, 255 S.E.2d at 508).
The error was patently harmful and was "so contrary to fundamental notions of justice that to permit it to pass uncorrected would seriously undermine the integrity of our judicial system." Brown, 8 Va.App. at 133, 380 S.E.2d at 11. "The state's interest in prevailing at trial and upholding the verdict on appeal must be tempered by its duty to work for a just, fair and accurate adjudication of criminal cases." Id. at 133 n. 3, 380 S.E.2d at 11 n. 3 (emphasis added). For these reasons, I would reverse the conviction and remand for a new trial.

Upon a Petition for Rehearing En Banc Before the Full Court
On September 25, 1991 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 10, 1991 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 10, 1991 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[1] The jury also found appellant guilty of malfeasance in office and fixed his punishment at twelve months in jail and a $1,000 fine. However, the trial judge later vacated that conviction.
[2] "No ruling of the trial court ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.