COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Overton and Senior Judge Duff
Argued at Alexandria, Virginia


GREGORY A. MORRIS
                                           OPINION BY
v.    Record No. 2995-97-4          JUDGE CHARLES H. DUFF
                                         JANUARY 12, 1999
VIRGINIA RETIREMENT SYSTEM


          FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                Carleton Penn, Judge Designate

         James E. Swiger (Swiger & Cay, on brief), for
         appellant.

         Louis E. Matthews, Jr., Assistant Attorney
         General (Mark L. Earley, Attorney General;
         Michael K. Jackson, Senior Assistant Attorney
         General, on brief), for appellee.


     Gregory A. Morris appeals a decision of the Circuit Court of

Fauquier County ("circuit court") affirming a decision of the

Virginia Retirement System ("VRS").  Morris contends the trial

court erred in upholding VRS's determination that Code

§ 51.1-157(C) is unambiguous and required VRS to reduce Morris's

monthly VRS benefits by the amount of permanent partial

disability ("PPD") benefits awarded to him by the Virginia

Workers' Compensation Commission ("commission") pursuant to Code

§ 65.2-503.  Finding that the trial court erred in construing

Code § 51.1-157(C), we reverse.

                               I.

     In July 1993, while employed as a Virginia State Trooper,

Morris sustained serious and permanent injuries caused by the

discharge of a firearm during a training drill.  Beginning in

July 1993, Morris received temporary total disability ("TTD") benefits pursuant to the Workers' Compensation Act ("the Act") in the amount of $451 per week.

After the commission awarded Morris workers' compensation benefits, he applied for state retirement benefits from VRS. VRS approved his application. Morris's full VRS benefit, before adjustment for workers' compensation payments, was $2,238 per month. VRS offset this amount, pursuant to Code § 51.1-157(C), by the $451 in TTD benefits received by Morris each week, a $1,954 per month reduction. As a result, Morris received $284 per month from VRS ($2,238 minus $1,954).

On February 12, 1996, the commission awarded Morris PPD benefits pursuant to Code § 65.2-503, effective September 1, 1995, in the amount of $451 per week for 276.5 weeks. These benefits were payable for sixty-eight percent loss of use of Morris's left leg and for ninety percent loss of use of his right leg. It is undisputed that these benefits were awarded for the permanent loss of use of the lower extremities and not for wage loss due to inability to return to work.

Contemporaneous with the PPD award, Morris also established an actual wage loss, an inability to return to his pre-injury work, entitling him to a weekly award of temporary partial disability ("TPD") benefits of $156.55 pursuant to Code § 65.2-502. The combined TPD benefits and PPD benefits payable to Morris totalled $607.55 per week, for a total payment of

$2,633 per month.

Morris notified VRS by letter that the commission had reduced his lost wage benefits from $451 per week to $156.55 per week. As a result of reviewing the workers' compensation award, VRS notified Morris that it intended to reduce his VRS benefits to reflect what it contended to be an increase in the workers' compensation benefits he had been awarded. VRS combined the TPD benefits with the PPD benefits and offset those benefits against Morris's VRS benefits. The total workers' compensation benefits of $2,633 per month exceeded the VRS monthly benefit of $2,238. VRS notified Morris of its long-standing position that, pursuant to Code § 51.1-157(C), it was required to offset his VRS benefits by any workers' compensation payments he received.

On January 9, 1997, VRS requested an informal fact-finding hearing to determine if it should reinstate Morris's VRS payments, which had been eliminated as a result of the change in his workers' compensation award. On February 6, 1997, Morris waived his right to an evidentiary hearing because no facts were in dispute. On February 12, 1997, the appointed VRS fact finder ruled that the VRS benefits had to be offset by the TPD and PPD benefits received by Morris because Code § 51.1-157(C) requires that any payments under the Act must offset the VRS allowance.

In a February 25, 1997 letter, the Director of VRS issued the final agency decision that denied Morris's request that his VRS benefits not be offset by the amount payable to him under the

- 3 -

Act for the permanent loss of use of his lower extremities. Morris conceded that VRS was entitled to offset his VRS benefits with the amount he received as TPD benefits, but not with the amount he received as PPD benefits.

Morris filed a timely appeal to the circuit court. By opinion letter dated October 29, 1997, the circuit court denied the relief sought by Morris. The circuit court held that Code § 51.1-157(C) is not ambiguous and that VRS did not err in ruling that Morris's VRS benefits should be reduced by the PPD benefits received by him pursuant to Code § 65.2-503. The circuit court entered its final order on November 18, 1997. This appeal followed.

II.

In the proceedings before VRS and the circuit court, the facts were stipulated. Therefore, the issue presented by this appeal is one of law, viz the interpretation of the applicable statutes. In Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 468 S.E.2d 905 (1996), the Supreme Court held as follows:

> The sole issue involves a question of statutory interpretation. The issue does not involve "the substantiality of the evidential support for findings of fact," which requires great deference because of the specialized competence of the agency. Instead, when, as here, the question involves a statutory interpretation issue, "little deference is required to be accorded the agency decision" because the issue falls outside the agency's specialized competence. In sum, pure statutory interpretation is the prerogative of the judiciary.

Id. at 404, 468 S.E.2d at 908 (citations omitted).

Appellant contends that Code § 51.1-157(C) is ambiguous as applied to the facts of this case.  We agree.  That statute provides in its pertinent part as follows:

> Any allowance payable to a member who retires for disability from a cause compensable under the Virginia Workers' Compensation Act <u>shall be reduced by the amount of any payments under the provisions of the Act</u> in effect on the date of retirement of the member and the excess of the allowance shall be paid to the member. When the time for compensation payments under the Act has elapsed, the member shall receive the full amount of the allowance payable during his lifetime and continued disability.  If the member's payments under the . . . Act are adjusted or terminated for refusal to work or to comply with the requirements of § 65.2-603, his allowance shall be computed as if he were receiving the compensation to which he would otherwise be entitled.

(Emphasis added.)

Taken literally, the language "any payments" under the Act would include payments for medical expenses and vocational rehabilitative services pursuant to Code § 65.2-603; payments of the twenty percent penalty for the late payments of compensation under Code § 65.2-524; payments for costs and attorney's fees under certain circumstances pursuant to Code § 65.2-713; and payments for cost of living supplements pursuant to Code § 65.2-709.  However, the record shows that none of these "payments" are considered by VRS in adjusting a beneficiary's entitlement.

VRS argues that "any payments" as used in the statute means

only those payments made directly to a claimant. Such argument might serve as the basis for not adjusting retirement benefits for medical expenses paid to health care providers but does not explain VRS's treatment of the twenty percent penalty assessed on benefits due to untimely payments (Code § 65.2-524) or for costs. These benefits are payable directly to the claimant.

In Lee-Warren v. School Board of Cumberland County, 241 Va. 442, 403 S.E.2d 691 (1991), the Supreme Court held that "[l]anguage is ambiguous when it may be understood in more than one way . . . . If the language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness, an ambiguity exists." Id. at 445, 403 S.E.2d at 692.

We hold that the term "any payments under the provisions of the Act" is ambiguous, at least as it relates to the treatment of PPD benefits.

III.

It is well settled that in construing the intent of Code § 51.1-157(C), we must read the statute in pari materia with other statutes relating to the same subject matter. We determine the legislature's intention from the whole of the enactments. See Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994). Code § 51.1-158 deals with the same subject matter as Code § 51.1-157 and provides as follows:

> The retirement allowance (i) of any
> member retiring for disability from a cause
> compensable under the Virginia Workers'
> Compensation Act (§ 65.2-100 et seq.) or (ii)
> of any surviving spouse, minor child, or

parent, eligible to receive a benefit as a result of the death of a member from a cause compensable under the Virginia Workers' Compensation Act, who elects to receive a lump-sum settlement _in lieu of periodic payments for disability or death_ compensable under the Virginia Workers' Compensation Act shall be adjusted by an amount determined by dividing the workers' compensation benefit which such person would have received had the lump-sum settlement not been consummated, into the settlement actually accepted by the member, surviving spouse, child, or parent.

(Emphasis added.)

Morris contends that if VRS is correct in its argument that the words "any payments" contained in Code § 51.1-157(C) include benefits for permanent loss of use of his legs, then he would be able to avoid the reduction of his VRS benefits simply by accepting a lump-sum settlement rather than the usual periodic payments over a fixed number of weeks. He argues that the payments for permanent loss of use of his legs are not payments for "disability or death." He contends this result could not have been intended by the legislature. We agree. Had the legislature intended that the phrases "any payments" in Code § 51.1-157(C) and "periodic payments for disability or death" in Code § 51.1-158 meant the same thing, they would have used the same terms. See Campbell v. Commonwealth, 13 Va. App. 33, 38, 409 S.E.2d 21, 24 (1991).

IV.

Lastly, we turn to VRS's position that the obvious purpose of the two statutes is to prevent "double-dipping" or receiving

- 7 -

payment from two state agencies for the same loss.  We agree that such is the purpose of the statutes but disagree that the payments for loss of use of the legs and the retirement benefits from VRS are for the same loss.

Retirement benefits are designed to replace, at least partially, wages lost by virtue of retirement.  They have no relation to injury or ability to work.  Most retirees drawing such benefits do so without injury or disability.

Benefits paid pursuant to Code § 65.2-503 of the Act for the loss of use of a body member are not payments for lost wages but for loss of what might be termed "human capital."  These benefits are in no way contingent upon or related to a worker's capacity to work or income earned after return to work.  In that regard, they are unique.

Double-dipping would occur if Morris were able to draw wage loss benefits (either total or partial) under Code §§ 65.2-500 and 65.2-501 of the Act and at the same time draw unadjusted VRS retirement benefits.  Morris makes no such claim.  His contention is based on benefits paid under Code § 65.2-503 for loss of use of a body member.

Benefits payable under Code § 65.2-503 are unique in other respects.  If Morris were to die from a cause not related to his July 19, 1993 gunshot wounds, his beneficiaries would be entitled to continued payments under Code § 65.2-503 until the full amount of the loss of use benefits was paid to his statutory dependents.

We also note that the last sentence of Code § 51.1-157(C) states: "If the member's payments under the Virginia Workers' Compensation Act are adjusted or terminated for refusal to work or to comply with the requirements of § 65.2-603, his allowance shall be computed as if he were receiving the compensation to which he would otherwise be entitled." However, permanent loss of use benefits payable under Code § 65.2-503 <u>cannot</u> be adjusted or terminated for a refusal to work. This is a common-sensical result, inasmuch as a refusal to work does not affect the degree of permanent loss of use so as to prejudice the employer. Additionally, Code § 65.2-510 expressly states that if an employee refuses to accept employment procured for him or her, he or she shall only be entitled to the benefits provided in Code § 65.2-503, permanent loss of use, and for benefits under Code § 65.2-603, medical benefits, excluding coverage for vocational rehabilitation.

Accordingly, we hold that Code § 51.1-157(C) is ambiguous and that construing such section with Code § 51.1-158 utilizing the doctrine of <u>in pari materia</u>, the legislature intended that retirement benefits would be reduced by wage loss or death benefits paid to or on behalf of a claimant but would not be reduced for permanent loss of use benefits paid pursuant to Code § 65.2-503.

The judgment appealed from is reversed, and VRS is directed to make payments to appellant in accordance herewith.

Reversed.