COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Clements
Argued by teleconference


LENA ROBERTSON FOR
 CHARLES ROBERTSON, DECEASED
                                          OPINION BY
v.    Record No. 3431-01-2         JUDGE RUDOLPH BUMGARDNER, III
                                         AUGUST 27, 2002
E.I. DuPONT de NEMOURS & COMPANY, INC.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Gary W. Kendall (J. Gregory Webb; Michie,
             Hamlett, Lowry, Rasmussen & Tweel, P.C., on
             brief), for appellant.

             Stephen D. Busch (Kathryn A. Ramey;
             McGuireWoods LLP, on brief), for appellee.


     Lena Robertson, widow of Charles Robertson, appeals the

denial of her claim for temporary total benefits, Code

§ 65.2-500, and the award of permanent partial benefits for

Stage I asbestosis based on Mr. Robertson's average weekly wage

when he last worked, twenty-six years earlier, Code

§ 65.2-503(B)(17)(a).  For the following reasons, we affirm.

     The facts were stipulated.  Charles Robertson retired from

E.I. DuPont de Nemours twenty-six years before he was diagnosed

with Stage I asbestosis.  He had worked for DuPont for

twenty-seven years, and his last occupational exposure to

asbestos occurred during his employment there.  The worker did

not work, earn wages, or seek to earn wages after his voluntary

retirement in 1973.  Charles Robertson earned no wages in the 52 weeks prior to his diagnosis of asbestosis and suffered no loss of wages as a result of the diagnosis.  He died a year after the diagnosis.

The commission denied the worker's claim for temporary disability benefits because he had not earned any wages in the 52 weeks prior to the date of communication of his disease to him.  The commission based its decision on Newton v. Fairfax Police Dep't, 259 Va. 801, 529 S.E.2d 794 (2000), and Arlington County Fire Dep't v. Stebbins, 21 Va. App. 570, 466 S.E.2d 124 (1996).  Those cases control this case.

Stebbins was a voluntarily retired firefighter.  He had not earned any income for 52 weeks before being diagnosed with an occupational disease, heart disease.  This Court vacated the commission's award of compensation for lost wages because an award under those circumstances would result in an economic windfall to the worker.  21 Va. App. at 574, 466 S.E.2d at 126. "The purpose of the Workers' Compensation Act is to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries.  Based on this purpose, the Act compensates injured employees for loss of earning capacity." Id. at 572, 466 S.E.2d at 125-26 (citations omitted). "Compensation is ultimately dependent upon and determined on the loss of wages."  Id. at 573, 466 S.E.2d at 126 (citations

omitted).  Stebbins was not entitled to compensation for lost wages because he suffered no economic loss.

The Supreme Court applied that analysis in Newton, 259 Va. at 804, 529 S.E.2d at 795.  Newton was a voluntarily retired policeman, who died from a heart attack shortly after receiving a diagnosis of heart disease, an occupational disease.  He had not earned wages or sought employment for 52 weeks before learning of his disease.  The Court affirmed the denial of weekly indemnity benefits because there was no economic loss.  "Claimants are not entitled to weekly indemnity benefits because Newton did not receive any earnings from employment during the 52 weeks preceding the date of the communication of the diagnosis of his occupational disease."  Id. at 805, 529 S.E.2d at 796.

In this case, the worker earned no wages during the 52 weeks prior to the date his disease was communicated to him.  We affirm the denial of the claim for wage loss benefits because he suffered no economic loss.

The commission did award compensation for permanent partial loss for Stage I asbestosis.  Code § 65.2-503(B)(17)(a).  Benefits for the losses listed in Code § 65.2-503 have been described as payment for "loss of what might be termed 'human capital.'"  Morris v. Virginia Retirement Sys., 28 Va. App. 799, 806, 508 S.E.2d 925, 929 (1999).  Such benefits are not related to income earned.  While the commission awarded these benefits,

- 3 -

it ruled the average weekly wages would be calculated at the wages the worker last earned prior to his retirement from DuPont twenty-six years before. The worker argues he is entitled to an enhanced average weekly wage, based on the date the disease was communicated to him, as provided in Code § 65.2-406(C).[1]

The commission relied on Chesapeake & Potomac Telephone Co. v. Williams, 10 Va. App. 516, 392 S.E.2d 846 (1990), in ruling that the earlier wage applied. Williams was diagnosed with mesothelioma caused by exposure to asbestos after he voluntarily retired from C&P, but while earning a lower wage with another employer. C&P argued that the proper average weekly wage was the lower wage the worker earned during the preceding 52-week period. The only issue was whether the commission erred in

---

[1] Code § 65.2-406(C), provides in relevant part,

> For a first or an advanced stage of asbestosis . . . if the employee is still employed in the employment in which he was injuriously exposed, the weekly compensation rate shall be based upon the employee's weekly wage as of the date of communication of the first or advanced stage of the disease, as the case may be. If the employee is unemployed, or employed in another employment, the weekly compensation rate shall be based upon the average weekly wage of a person of the same or similar grade and character in the same class of employment in which the employee was injuriously exposed and preferably in the same locality or community on the date of communication to the employee of the advanced stage of the disease . . . .

calculating his average weekly wage as the wages earned during his exposure to the disease.  The decision specifically dealt with the issue the claimant raises in this case.

> However, we find that by using the phrase "in the employment in which he was working at the time of his injury" in Code § 65.1-6 [now 65.2-101], the legislature intended that the average weekly wage award be based upon the wages received from the employment where the employee was exposed to the element which caused the occupational disease for which claim is made.

Id. at 519, 392 S.E.2d at 848.

Contrary to C&P's argument that the later date of communication should be used, the decision distinguished between "the time of injury for purposes of the average weekly wage" and "the date of injury for purposes of the statute of limitations." Id. at 516, 392 S.E.2d at 847.  The date an occupational disease is discovered and communicated to the worker "shall be treated as the happening of an injury by accident" for purposes of the statute of limitations.  Code § 65.2-403(A).  Average weekly wage, however, is defined as "the earnings of an injured employee in the employment in which he was working at the time of the injury."  Code § 65.2-101.

In this appeal, the worker argues asbestosis should be treated differently from other diseases when determining wage loss benefits.  However, we are bound by the explicit holding in Williams.  See Commonwealth v. Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990).  We affirm the commission's calculation

- 5 -

of the worker's average weekly wage at the amount he earned at the time he was exposed to the asbestos.

For the reasons stated, we affirm the decision of the commission.

<u>Affirmed.</u>

Elder, J., concurring, in part, and dissenting, in part.

I concur in the majority's decision affirming the commission's denial of temporary total disability benefits. However, I disagree that our holding in Chesapeake & Potomac Telephone Co. v. Williams, 10 Va. App. 516, 392 S.E.2d 846 (1990), compels the commission's conclusion that the permanent partial disability benefits awarded for Charles Roberston's asbestosis should be calculated based on the average weekly wage he earned before voluntarily retiring in 1973. Therefore, I respectfully dissent from this portion of the majority opinion.

The claimant in Williams sought temporary total disability compensation for mesothelioma rather than asbestosis.[2] See 10 Va. App. at 517, 392 S.E.2d at 847. Although the portion of present Code § 65.2-406(C) providing for an enhanced weekly compensation rate refers specifically to both asbestosis and mesothelioma, this has not always been the case. The claimant in Williams received his mesothelioma diagnosis on January 20, 1988. See Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 54, 122

---

[2] Mesothelioma is a form of cancer which affects mesothelial tissue in the lungs, peritoneum or pericardium. The Sloane-Dorland Annotated Medical-Legal Dictionary 351 (Supp. 1992). Asbestosis is "a form of lung disease (pneumoconiosis)" which causes interstitial fibrosis or scarring of the lungs. Id. at 36. "'[N]ot everyone who develops asbestosis develops mesothelioma, and it is not necessary to have asbestosis to have mesothelioma.'" Id. at 352 (quoting Owens Corning Fiberglas Corp. v. Hammond, 555 N.E.2d 1233, 1236 (Ill. App. Ct. 1990)). Although both are caused by exposure to asbestos, "'asbestosis and mesothelioma are two separate diseases.'" Id. (quoting Hammond, 555 N.E.2d at 1236).

S.E.2d 666, 670 (1961) (holding that law in effect at time of incapacity governs, not law in effect at time of death or time award is made).  The version of the statute in effect at that time, Code § 65.1-52, the predecessor statute to present Code § 65.2-406, referred only to asbestosis, providing as follows:

> For a first or an advanced stage of asbestosis, if the employee is still employed in the employment in which he was injuriously exposed, the weekly compensation rate shall be based upon the employee's weekly wage as of the date of communication of the first or advanced stage of the disease, as the case may be.  If the employee is unemployed, or employed in another employment, the weekly compensation rate shall be based upon the average weekly wage of a person of the same or similar grade and character in the same class of employment in which the employee was injuriously exposed and preferably in the same locality or community on the date of communication to the employee of the advanced stage of the disease.

Code § 65.1-52 (Repl. Vol. 1987 & 1989 Supp.) (emphasis added); 1985 Va. Acts, ch. 191; 1989 Va. Acts, ch. 502.  Another portion of Code § 65.1-52 then in effect, not directly related to the enhanced compensation rate provisions, referred specifically to both asbestosis and mesothelioma, making clear the legislature recognized them as two separate diseases.  See Code § 65.1-52(A) (Repl. Vol. 1987 & 1989 Supp.).

Thus, both when Williams received his mesothelioma diagnosis on January 20, 1988, and when this Court decided Williams on June 19, 1990, the portion of Code § 65.1-52

providing an alternate method for calculating an employee's average weekly wage expressly applied only to employees suffering from asbestosis, not to employees suffering from mesothelioma. The legislature amended Code § 65.1-52 to include both asbestosis and mesothelioma, but that amendment did not take effect until July 1, 1990, see 1990 Va. Acts, ch. 417,[3] after issuance of the decision in Williams on June 19, 1990.

The Court's failure in Williams to apply the special method for calculating average weekly wage set out in Code § 65.1-52 rather than the general method in Code § 65.1-6[4] may be explained

---

[3] As amended in 1990, Code § 65.1-52 provided as follows:

> For a first or an advanced stage of asbestosis or diagnosis of mesothelioma, if the employee is still employed in the employment in which he was injuriously exposed, the weekly compensation rate shall be based upon the employee's weekly wage as of the date of communication of the first or advanced stage of the disease, as the case may be. If the employee is unemployed, or employed in another employment, the weekly compensation rate shall be based upon the average weekly wage of a person of the same or similar grade and character in the same class of employment in which the employee was injuriously exposed and preferably in the same locality or community on the date of communication to the employee of the advanced stage of the disease or diagnosis of mesothelioma.

1990 Va. Acts, ch. 417. In its present version, former Code § 65.1-52, now § 65.2-406, refers to "a first or an advanced stage of asbestosis or mesothelioma." 1995 Va. Acts, ch. 324.

[4] This provision is now codified at § 65.2-101.

by the fact that, under the version of Code § 65.1-52 in effect at that time, the special average weekly wage provisions did not apply to claimants suffering from mesothelioma.  Thus, the holding in Williams set out the method to be used for determining average weekly wage for those employees suffering from occupational diseases other than those affected by the special average weekly wage provisions of Code § 65.1-52, which, at the time, applied only to asbestosis.  Even in that context, the Court noted that Code § 65.1-6's provisions defining average weekly wage "contain[] language which gives the commission some latitude to determine what method" of calculation should be used.  Williams, 10 Va. App. at 520 n.2, 392 S.E.2d at 848 n.2. To hold that Williams requires an award of permanent partial disability benefits based on the average weekly wage claimant earned twenty-six years before his asbestosis diagnosis would be to render meaningless the special average weekly wage provisions of Code § 65.2-406(C), which expressly apply to asbestosis, and would do so unnecessarily.

Having concluded that Williams does not prevent application of the average weekly wage provisions of Code § 65.2-406(C), I would also reject employer's contention that these provisions do not apply to claimants who are voluntarily retired.  I see no reason to interpret the Act to provide one method of calculating average weekly wage for employees who have voluntarily retired and another method for employees unemployed for any other reason

as well as employees still working for the same or a different employer. Rather, the more logical conclusion is that the legislature intended to provide an alternate method of calculation for all employees based on the type of occupational disease from which they suffer, asbestosis or mesothelioma resulting from industrial exposure to asbestos. As we noted in discussing differences in the statutes of limitations for various occupational diseases, the legislature has "recognized that asbestosis is a progressive disease which may manifest itself many years after the cessation of [the] employment" in which the asbestos exposure occurred. Parris v. Appalachian Power Co., 2 Va. App. 219, 221-22, 343 S.E.2d 455, 456 (1986) (noting legislature's deletion of five-year statute of limitations for asbestosis, leaving provision that claim is timely if filed within two years of communication of diagnosis to employee).

Interpreting Code § 65.2-406(C) as including all employees with industrial asbestosis and mesothelioma compels the conclusion that the "unemployed" include all those employees voluntarily retired. Contrary to the argument of employer, such an interpretation does not automatically entitle a voluntarily retired claimant to temporary disability benefits. Code § 65.2-406(C) merely provides the method for calculating the average weekly wage. A claimant seeking temporary or permanent disability benefits must still prove an entitlement to those

- 11 -

benefits under another portion of the Act.  As the majority opinion holds, a voluntarily retired claimant who is "unemployed" within the meaning of Code § 65.2-406(C) when he becomes temporarily disabled from an occupational disease is not entitled to temporary disability benefits under the Act because he has no wage loss.  See, e.g., Newton v. Fairfax Police Dep't, 259 Va. 801, 804, 529 S.E.2d 794, 795 (2000).  Nevertheless, a voluntarily retired employee may be entitled to permanent disability benefits under Code § 65.2-503, calculated at the rate set out in Code § 65.2-406(C), because such benefits, as explained by the majority opinion, are for the "loss of what might be termed 'human capital.'"  Morris v. Virginia Retirement Sys., 28 Va. App. 799, 806, 508 S.E.2d 925, 929 (1999).

For these reasons, I would hold the commission erred in calculating claimant's average weekly wage under Williams rather than under the express terms of Code § 65.2-406(C).  Thus, I respectfully dissent from this portion of the majority opinion.