## Richmond

### Thomas Hart

### v.

### Commonwealth of Virginia

August 28, 1980.

Record No. 791798.

Present: Carrico, Harrison, Cochran, Poff, Compton, and
Thompson, JJ., and Harman, S.J.

*Edward S. Rosenthal* (*Miller, Rosenthal & Grimaldi,* on briefs), for appellant.

*Thomas D. Bagwell, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

The trial court, sitting without a jury, convicted Thomas Hart of statutory burglary, sentenced him to confinement in the penitentiary for two years, and suspended the entire sentence upon certain specified conditions. On appeal, the question is whether an oral confession made by Hart should have been excluded from evidence as the product of an unlawful search and seizure of his clothing.

On June 24, 1978, at approximately 5:00 a.m., a Fairfax County police officer, Richard Reeder, arrived at a McDonald's restaurant on Route 1 to investigate a burglary reported by a truck driver for

McDonald's. The driver told Reeder that the man whom he had seen leaving the building was dressed like Hart, who was then in sight walking north on the shoulder of Route 1. Reeder, accompanied by the driver, approached Hart and questioned him, but the driver could not positively identify Hart as the burglar. Reeder observed that Hart was unsteady, his eyes were bloodshot, his speech was slurred, and there was alcohol on his breath. Reeder testified that, although he believed that he could have arrested Hart at that time for being drunk in public, his responsibility was to investigate the burglary. As he did not think that Hart was involved in that crime, the officer did not arrest him, and Hart resumed walking along Route 1.

Approximately two minutes later, another police officer stopped Hart and observed what appeared to be glass fragments imbedded in his trousers and shoes. Apprised of this information, Reeder arrested Hart for being drunk in public. The officer, however, conceded that he made the arrest because he was interested in obtaining the glass fragments for laboratory comparison with glass particles broken from the windows and door of the restaurant during the burglary. Reeder transported Hart to a police station, arraigned him before a magistrate, and, after reading him the warnings mandated by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), interrogated him. Hart denied having had anything to do with the burglary. Reeder then took Hart's trousers and shoes for laboratory testing, leaving Hart in his underwear in a detention cell where he remained until other clothes were brought to him and he was released from custody. Reeder acknowledged that he was unaware of any police policy requiring the removal of clothes and shoes from persons arrested for being drunk in public.

Hart's motion to suppress evidence, including his own inculpatory statement, obtained following the alleged unlawful search and seizure, was considered at trial rather than in pretrial proceedings. Hart, testifying for the limited purpose of supporting the motion, admitted that he had been drinking heavily, that he had "passed out" several times during the night, and that he had taken his last drink about 3:00 a.m., but was still feeling the effects of alcohol when he first encountered Officer Reeder on Route 1. After he was stopped the second time, Hart asserted, he overheard the officers say that they wanted to get some glass from his clothes to "match" with that found in the restaurant. Hart testified that after he was arrested by Reeder and taken to the police station, Reeder expressed the opinion

that he was a suspect in the burglary and informed him that his clothes and the glass on them would be sent to a laboratory for analysis.

The prosecuting attorney argued that the search and seizure were not conducted "entirely" incident to Hart's arrest, but were carried out pursuant to "continuing probable cause to take an item". The trial court, however, found that the officer arrested Hart because he had "additional cause to believe" that Hart, with "sand or what appeared to be some type of glass on his trousers", might be involved in the burglary. The court then sustained the motion to suppress the physical evidence and the laboratory analysis of the glass fragments on the ground that charging Hart with being drunk in public and taking him into custody was "simply a pretext arrest". The court's ruling, however, did not embrace the inculpatory statement to which the motion to suppress was also directed, and evidence was introduced showing the circumstances under which Hart gave the statement.

On July 17, 1978, Investigator Terry W. Baker obtained a warrant charging Hart with the statutory burglary of the McDonald's restaurant. Baker testified that at his request Hart came to the police station the next evening "in reference to" the burglary. Hart had not then been arrested on that charge. Prior to interrogating Hart, Baker read to him the *Miranda* warnings and Hart executed a waiver form. Baker informed Hart that he knew that glass had been found on Hart's clothing at the time of his arrest for being drunk in public, and that the laboratory certificate of analysis of the glass fragments established Hart's presence at the scene of the burglary. Hart then gave Baker an oral statement concerning the crime. Baker asserted that Hart was not intoxicated, was not subjected to force or threats, and was not offered any promises or inducements before making the statement.

Hart objected to the admissibility of the statement on the ground that it was obtained in exploitation of the primary illegality of the search and seizure of his trousers and shoes, and that the giving of *Miranda* warnings alone was not sufficient to attenuate the taint. The prosecuting attorney argued that the statement was freely and voluntarily given by Hart almost a month after his arrest on June 24 and was therefore admissible. In answer to the question posed by the trial court whether Hart was not induced to make the statement because "the officer told him that glass was found on his clothing at the time of the arrest", the prosecutor replied that since Hart knew

from the conversation between the officers when he was first arrested that the glass fragments had been discovered, confirmation of this fact did not cause him to confess.

Without assigning reasons for its ruling, the trial court overruled Hart's objection to the admissibility of the statement. Baker then testified that Hart related that, after an argument with his girl friend, he had been drinking, and as he was walking home, he decided to break into the McDonald's restaurant because he was hungry. Hart confessed to Baker that he broke a window, entered the building, and took five or six packages of buns and some sausage patties.

■ The trial court's earlier ruling that sustained in part Hart's motion to suppress evidence was made pursuant to the exclusionary rule established by the United States Supreme Court in *Weeks* v. *United States,* 232 U.S. 383 (1914), and made applicable to the states by *Mapp* v. *Ohio,* 367 U.S. 643 (1961), whereby evidence obtained in violation of the Fourth Amendment proscription of unreasonable searches and seizures may not be used against an accused. We note with interest the "disenchantment" of some members of the Supreme Court with this rule. *See Brown* v. *Illinois,* 422 U.S. 590, 600, n. 5 (1975). Our own philosophical misgivings* are irrelevant, and we will of course continue to apply the rule as construed from time to time by the Supreme Court. *See Thims* v. *Commonwealth,* 218 Va. 85, 235 S.E.2d 443 (1977). Hart contends that the trial court, having applied the rule to exclude all other evidence obtained by means of the illegal search and seizure, should have excluded also his oral confession as the product of the unlawful police actions, under the "fruit of the poisonous tree" doctrine set forth in *Wong Sun* v. *United States,* 371 U.S. 471, 488 (1963). *See United States* v. *Crews,* 445 U.S. 463, 471-72 (1980).

■ The Attorney General stresses Baker's giving of *Miranda* warnings prior to questioning Hart. We agree that the record establishes that the warnings were given and that there was no violation

---

*The Virginia Search and Seizure Act of 1920 made it a misdemeanor for any law enforcement officer to search without a warrant. An offending officer was liable to the victim in compensatory and punitive damages and, upon a second conviction, forfeited his office. Acts 1920, c. 345; Code § 19.2-59. In *Hall* v. *Commonwealth,* 138 Va. 727, 121 S.E. 154 (1924), the exclusionary rule was rejected, after careful consideration, on the premise that an unlawful search is a completed offense against the constitutional rights of the accused, for which the officer may be held accountable without depriving the government of its right to use evidence, otherwise competent and relevant, against violators of its criminal laws.

of Hart's Fifth Amendment rights. But we are here concerned with his Fourth Amendment rights. *Miranda* warnings *per se* are insufficient to break the causal chain between illegal police conduct and a confession, and the prosecution bears the burden of showing that the confession was not obtained by exploitation of the illegal action. *Brown* v. *Illinois, supra,* 422 U.S. at 604; *Reese* v. *Commonwealth,* 220 Va. 1035, 265 S.E.2d 746 (1980). Thus, when a confession was made less than two hours after an illegal arrest, and there was no intervening event of significance, the close causal connection between the illegal detention and the confession rendered the confession inadmissible. *Dunaway* v. *New York,* 442 U.S. 200 (1979).

The controlling principles were applied with unusual results in *Reese,* where two warrantless searches were made on the same day. The first search was an investigatory search of a motor vehicle made in the morning under the pretext of conducting an inventory search authorized under the inventory exception to the warrant requirement approved in *South Dakota* v. *Opperman,* 428 U.S. 364 (1976). The defendant, Reese, confronted with items seized in that search, confessed to the crime of robbery committed in Fauquier County. We held that because the search and seizure violated Reese's Fourth Amendment rights, his confession to that crime was induced by the unlawful police actions and was inadmissible in evidence against him. However, a valid inventory search was made in the afternoon and other items were seized at that time. During questioning as to a robbery and other crimes committed in Fairfax County, Reese was confronted with items found in the afternoon search, and he confessed to the Fairfax offenses. We upheld the admissibility of this confession.

In both instances, Reese was given his *Miranda* warnings before being interrogated, and the record showed that his Fifth Amendment rights had not been violated. The confession to the Fauquier robbery was tainted by the unlawful search and seizure, but nothing seized in that search was used to induce Reese to confess to the Fairfax crimes. We held that the causal chain between the unlawful search and the second confession had been broken by the intervention of the lawful inventory search, and that there had been no exploitation of the unlawful search to taint the confession to the Fairfax offenses. *See also Warlick* v. *Commonwealth,* 215 Va. 263, 208 S.E.2d 746 (1974).

Here, a lapse of time of almost a month occurred, but there was no break in the causal connection between the unlawful search and

seizure and Hart's confession. In *Wong Sun,* the confession of one defendant made several days after his release upon personal recognizance following an unlawful arrest was admitted into evidence because the taint had been dissipated by the defendant's voluntary act in returning to make an incriminating statement. However, in the present case, there was an uninterrupted causal nexus between the "pretext arrest", the seizure of clothing containing glass particles, the report of the laboratory analysis of the glass, and the confession. There were no intervening circumstances. After receiving the laboratory report, Baker obtained an arrest warrant charging Hart with the burglary; Baker sent for Hart and confronted him with the test results; Hart then confessed. The record clearly indicates that the Commonwealth could not and did not carry its burden of showing that Hart's confession was not induced by the exploitation of the unlawful search and seizure of his trousers and shoes. The coercive effect did not come from Baker's remarks that glass was found on Hart's clothing, as the trial court tentatively suggested, but rather from the officer's disclosure to Hart of the incriminating laboratory report. We hold that the trial court erred in admitting the confession that followed.

On appeal, the Attorney General, over objection, suggested for the first time on brief and then again in oral argument an alternative ground for sustaining the trial court's ruling that Hart's confession was admissible. The Attorney General argued that Officer Reeder had probable cause to arrest Hart for the burglary, and thus had probable cause to search and seize his clothing. Approval of this theory would require, as the Attorney General conceded, that we hold that the arresting officer erred in believing that he did not have probable cause to arrest Hart for burglary, and that the trial court erred in finding that there was a "pretext arrest" for investigatory purposes and in excluding evidence seized pursuant to the arrest. Therefore, the argument continued, the trial court, in admitting the confession as a voluntary act on the part of Hart, reached the right result for the wrong reason. The correct reason, under this rationale, was that the confession was the product of a lawful search and seizure based upon probable cause. If there was probable cause to arrest Hart for burglary, then it is immaterial that he was arrested on another charge. *See Sullivan* v. *Commonwealth,* 210 Va. 201, 203, 169 S.E.2d 577, 579 (1969).

At trial, the Commonwealth, in opposing the motion to suppress, argued principally that the case involved "continuing probable cause to take an item, not search incident to arrest". In sustaining the mo-

tion to suppress, the trial court by implication ruled against the Commonwealth on this argument and determined that Hart had been arrested to enable the officers to conduct an illegal search and seizure. *See United States* v. *Lefkowitz,* 285 U.S. 452, 467 (1932). Correct or not, this determination nevertheless constituted the basis upon which the case thereafter was tried to a conclusion. The admissibility of the confession turned upon whether it was given independently and voluntarily or rather was the tainted product of the primary illegality. The question of probable cause for the search and seizure was not raised again after the trial court sustained in part the motion to suppress. Although the Attorney General insists that he is not asking for a reversal of the trial court's exclusion of the physical evidence and laboratory report, he is, in effect, seeking a reversal of that ruling to justify the court's subsequent ruling, otherwise untenable, that Hart's confession was admissible. The Commonwealth of course cannot appeal criminal cases which do not involve State revenues. Constitution of Virginia, Art. VI, Sec. 1; *City of Roanoke* v. *Donckers,* 187 Va. 491, 47 S.E.2d 440 (1948). We will not in this appeal permit the Commonwealth to accomplish indirectly what it cannot do directly, and we therefore reject the alternative ground advanced for the admissibility of Hart's confession.

The judgment of the trial court will be reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*