# JOSEPH A. CAMPBELL

### v.

# COMMONWEALTH OF VIRGINIA

Record No. 921406

June 11, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, Hassell, JJ.,
and Poff, Senior Justice

*Anthony F. Troy (Alan D. Albert; Mays & Valentine,* on briefs), for appellant.

*Robert Q. Harris, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

We awarded this appeal from the Virginia Court of Appeals to consider the question presented by the defendant's assignment of error, that is, whether conviction of forgery of public records requires proof of harm or prejudice to the rights of another person. We also granted the cross-error assigned by the Commonwealth in order to address the question whether this Court has jurisdiction to adjudicate that assignment. Because we decide both questions in the negative, we do not reach the subsidiary issues raised by the parties.

Joseph H. Campbell, a judge of the General District Court of the City of Norfolk, was convicted by a jury in the Circuit Court of the City of Norfolk of a violation of Code §§ 18.2-152.14 and 18.2-168. The indictment charged that Campbell did "forge or cause to be forged certain public records in that he directed that the true name 'Paul A. Sciortino' which appeared in computer data relating to . . . [a traffic ticket] be altered to the false name 'Anthony P. Schortinoe'."

The evidence adduced at trial is detailed in the record before us and, under familiar principles, we will review the evidence in the light most favorable to the Commonwealth. On March 20, 1989, Paul A. Sciortino, then Commonwealth's Attorney for the City of

Virginia Beach, was charged with making an improper turn that resulted in a minor traffic accident. Sciortino was earlier involved in a traffic accident that had exposed him to adverse publicity and cost the City of Virginia Beach more than $1,000,000.

Pursuant to a longstanding policy of the General District Court, Sciortino and his attorney, Andrew Ege, met with Campbell in his chambers to plead guilty to the ticket. During the meeting, Ege, in a "lighthearted manner", asked Campbell if the court could "just dismiss it." Campbell informed Ege and Sciortino that "the usual disposition on a plea of guilty is $60 fine and thirty suspended and traffic school." Sciortino and Ege agreed that this was acceptable and Sciortino paid the fine. Ege then asked if Sciortino's name had to "appear on the docket". Campbell said that the *case* had to appear on the docket. Next, Ege asked, "if his name is misspelled you don't have to correct it, do you?" Campbell responded that "there are a lot of clerical errors."

After Sciortino left, Campbell approached Kathleen Baker, a deputy clerk, and asked her to display Sciortino's record on the computer. This computer was utilized to create a daily docket record for the General District Court. Sciortino was engaged in a political campaign for reelection, and Campbell told Mrs. Baker that Sciortino was "scared to death about this accident because Paul thinks that the newspaper is going to crucify him again, and they probably will." Campbell then asked Mrs. Baker to "scramble or jumble" the letters of Sciortino's last name on the computer screen. Mrs. Baker changed the spelling from "Sciortino" to "Schortinoe" and asked Campbell, "How is that?" Campbell then asked her to switch the middle and the first name from "Paul A." to "Anthony P.". As he walked away from the computer, Campbell told everyone to "get back to work".

The jury fixed Campbell's punishment at three years' confinement in the penitentiary.[1] Campbell moved to set aside the verdict on the ground that the Commonwealth had produced no evidence of harm or prejudice to another's rights. The trial court ruled that conviction of forgery of public records did not require such proof, denied the motion, and imposed the sentence fixed by the jury with the balance of the term of imprisonment to be suspended after six months' confinement in jail.

[1] The jury also convicted Campbell of the charge of "malfeasance in office", a misdemeanor, but the trial court set that part of the verdict aside.

Assigning error to that ruling and to other incidents at trial, Campbell appealed to the Court of Appeals. In an opinion issued September 10, 1991, a panel of the Court of Appeals examined the statutory scheme of forgery and, affirming the trial court's ruling, held:

As the forgery of a public record is specifically listed as a writing or document which serves as a predicate to the offense of forgery, as codified in Code § 18.2-168, it need not be considered under the catch-all provision of Code § 18.2-172 which addresses "other writings." The words "to the prejudice of another's right" are only employed in cases involving writings other than those specifically listed as predicates to the offense of forgery. In the context of "other writings," the words "to the prejudice of another's rights" serve to distinguish "between those writings which might affect the rights of others whereof forgery might be committed, and other writings, by which, whether false or genuine, the pecuniary interests of others could not be affected."

*Campbell v. Commonwealth*, 13 Va. App. 33, 40, 409 S.E.2d 21, 25 (1991) (citation omitted). Applying Rule 5A:18, the panel further held that it could not consider Campbell's challenge to the intent-to-defraud instruction granted by the trial court because he had not properly preserved the issue at trial. *Id.* at 42, 409 S.E.2d at 27.

Granting Campbell's petition for a rehearing *enbanc*, the Court of Appeals limited the rehearing to the question whether the panel should have applied the "ends of justice" exception to Rule 5A:18. *Campbell v. Commonwealth*, 14 Va. App. 988, 421 S.E.2d 652 (1992). In the August 11, 1992 opinion, the Court of Appeals decided that question in the affirmative but left "unchanged the panel's disposition of other issues originally raised on appeal". *Id.* at 990, 421 S.E.2d at 653. The *en banc* court reversed Campbell's conviction and remanded the case for a new trial. Campbell appeals so much of that decision as upholds the rulings of the panel and the trial court that harm or prejudice to the right of another is not an element of forgery of public records. The Commonwealth assigns error to the *en banc* ruling underlying the decision to reverse the conviction.

## I. FORGERY OF PUBLIC DOCUMENTS

Code § 18.2-168, entitled **Forging public records, etc.**, provides that

> [i]f any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony.

This statute controls our determination of the case; however, the first inquiry we make in our interpretation of this statute concerns the posture of English common law. Code § 1-10 provides that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and the Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly."

■ Campbell argues that by "utilizing the common-law term 'forge,' Code § 18.2-168 necessarily invokes the common law" and that one of the elements of the crime of forgery at common law was "tangible harm or prejudice to the rights of another", irrespective of whether the writing involved was a private paper or a public record. While we agree that forgery of both public records and private papers was a common-law crime in England, we do not agree with Campbell's interpretation of the elements of those crimes at common law.[2]

"Of Forgery there are two kinds; First, by common law. Secondly, by the Statute. Sect. 1. Forgery by the common law seemeth to be an offence in falsely and fraudulently making or altering any matter of record; or any other authentic matter of a public nature . . . ." 1 William Hawkins, *Pleas of the Crown* 263 n. 1 (London, 8th ed. 1824).

■ "[A]t Common Law the Counterfeiting a Matter of Record is Forgery; for since the Law gives the highest Credit to all Records, it

---

[2] We are unpersuaded by Campbell's reliance on what he characterizes as Blackstone's "classic formulation" that forgery is the "fraudulent making or alteration of a writing to the prejudice of another man's right." 4 William Blackstone, *Commentaries* *247. This language is taken from a section in Blackstone limited to offenses against private property.

cannot but be of the utmost ill Consequence to the Publik to have them either forged or falsified.'' 2 Matthew Bacon, *Abridgment* *568 (1786). The common-law crime of forgery of public records, a capital offense in England, was augmented by statutes punishing the lesser offense of forgery of certain private documents.[3] *See, e.g.,* An Act Concerning Counterfeit Letters or Privy Tokens to Receive Money or Goods in Others Men's Names, 1541-42, 33 Hen. VIII, ch. 1 (Eng.). Unlike the crime of forgery of public records in which ''ill Consequence to the Publik'' was conclusively presumed, and unlike the common-law crime of forgery of private papers in which proof of *potential* harm or prejudice to another was required, conviction of the several statutory offenses generally required proof of *actual* harm or prejudice to the rights of another person. *See* 1 Hawkins at 263 n. 1; 2 Bacon at *568.

The question whether proof of harm or prejudice was essential to conviction of forgery of public documents as well as conviction of the crime of forgery of private writings and the distinctions between the common-law crimes and the statutory offenses were considered in *Rex v. Ward*, 92 Eng. Rep. 451 (K.B. 1727). There, Ward was convicted of a charge of ''falsely making and forging a writing upon the back of a certificate in writing''. *Id.* at 452. On appeal, Ward contended that forgery was an offense at common law only if the writing was a public document and that the writing in issue was a private paper. Ward also maintained that the statutes creating the crime of forgery of such a paper required proof of actual harm or prejudice and that, absent such proof against him, he was wrongfully convicted of forgery. The King maintained that forgery of private papers was not a crime at common law; that ''if such counterfeit letters had been at common law punishable as forgery, the making [of] that statute was unnecessary and useless'', *id.* at 453; and that the proof of harm or prejudice resulting from Ward's acts was sufficient to support his conviction.

Resolving these conflicting views, the court in *Ward* concluded that forgery of private writings, as well as forgery of public records, was an offense at common law; that proof of the potential for harm or prejudice to another was an element of the former but not of the latter; that the writing in issue was a public document;

---

[3] Code § 1-11 provides that ''any statute or act of Parliament, made in aid of the common law prior to [1776] . . . shall still be saved, insofar as the same are consistent with the Bill of Rights and the Constitution of this Commonwealth and the Acts of Assembly.''

and that the conviction should be upheld, irrespective of proof of harm or prejudice to another.

Most commentators have understood the *Ward* decision to establish that

> at common law it was forgery to make false *private* writings, as a bill of sale, bill of lading, an acquittance, a warrant of attorney, a bill of exchange. And [*Ward*] made this distinction between forgery at common law, and cheats by means of false tokens, under the stat. 33 Hen. 8. c. 1. that by the statute it was necessary the party should receive an actual prejudice, which was not necessary in forgery; in the latter case, it was sufficient if the party *might* be prejudiced by it.

1 William Hawkins, *Pleas of the Crown* 263 n.1 (London, 8th ed. 1824) (emphasis added); *accord* 2 William Russell, *On Crimes* 348-49 (Philadelphia, 4th ed. 1841); 3 Chitty's, *Criminal Law* 449-50 (Philadelphia, 1819); 2 Edward East's, *Pleas of the Crown* 859-60 (Philadelphia, 1806); 2 Matthew Bacon, *Abridgment* *568 (1786).

Applying the rules reconciled and the principles established in *Ward* and summarized by contemporary commentators, we hold that actual harm or prejudice to the rights of another was not an element of the crime of forgery of public records at English common law and that, pursuant to Code §§ 1-10 and -11, this became the law of this Commonwealth.[4]

Even so, Campbell contends that the posture of the English common law in 1776 has been altered by the General Assembly. Specifically, he maintains that "the history of § 18.2-168 and its statutory predecessors makes clear that harm or prejudice is an element of forgery of public records." The Code of 1819, he says, "belies the Commonwealth's argument . . . that 'prejudice' has somehow been *statutorily* excised from the elements of the crime of public records forgery." (Emphasis in original).

The Code of 1819 defines the crime of forgery for

---

[4] In support of his view to the contrary, Campbell relies on *Fitzgerald v. Commonwealth*, 227 Va. 171, 313 S.E.2d 394 (1984); *Bullock v. Commonwealth*, 205 Va. 558, 138 S.E.2d 261 (1964), *cert. denied*, 382 U.S. 927 (1965), *reh'g denied*, 382 U.S. 1000 (1966); *Gordon v. Commonwealth*, 100 Va. 825, 41 S.E. 746 (1902); *Powell v. Commonwealth*, 52 Va. (11 Gratt.) 822 (1854); *Hendrick v. Commonwealth*, 32 Va. (5 Leigh) 707 (1834); *Commonwealth v. Linton*, 4 Va. (2 Va. Cas.) 476 (1825). His reliance is misplaced. Those cases involved forgeries of private papers; in no way did they extend the common-law requirement of proof of harm or prejudice to the crime of forgery of public records.

any land warrant . . .; any paper bill of credit . . .; any certificate, manifest or receipt of any public inspector of flour, hemp, tobacco, or other thing; any loan office certificate; certificate of . . . stock . . .; or any record of any court, or public office, or of any body politic or corporate; or any will, testament or codicil; any deed, bond, writing or note; any bill of exchange, draft or order; any assignment, transfer or endorsement; any defeasance, acquittance or receipt; or any letter of credit, or other writing, to the prejudice of another's right . . . .

Va. Code ch. 154, § 4 (1819).

Construing this language, the Attorney General asserts that "[t]he descriptive phrase 'to the prejudice of another's right' appears only in relation to 'other writings.' " Campbell believes that "[t]he better reading of the 1819 act . . . is that in *each* of its list of objects, forgery requires proof of the element of prejudice, just as forgery of the 'other writings' in the residual category *also* requires proof of prejudice" (emphasis in original).

■ We agree with the Attorney General's construction. We think that the purpose of the 1819 Act was to codify the English common law and to preserve its distinctions between forgery of public records and forgery of private documents. In our view, the language "to the prejudice of another's right" modifies only writings other than those specifically listed by name.

Campbell's reading of the language ignores both English common law and this Court's decisions construing that language. In *Murry v. Commonwealth*, 32 Va. (5 Leigh) 720 (1835), this Court faced the issue whether the Code of 1819 required an allegation of actual prejudice of another's right in an indictment charging forgery of a bank note. We concluded that those words

relate, not to the different writings particularly mentioned in the previous part of the section, the counterfeiting of most of which had, long before, been made [a] felony; but only to the words immediately connected with them; "*any other writing, to the prejudice of another's right.*"

*Id.* at 723 (emphasis in original); *accord Powell v. Commonwealth*,

52 Va. (11 Gratt.) 822, 824-25 (1854); *Commonwealth v. Linton*, 4 Va. (2 Va. Cas.) 476, 478 (1825).[5]

Our interpretation of the 1819 statute is reinforced by the content and structure of the forgery sections contained in the Code of 1849. In its revision of the 1819 Code, the General Assembly divided the old statute into six sections. One dealt with public documents generally, one with keeping an instrument to forge the seal of court, one with forgery of official currency, one with the forgery of stamps, and one with forgery of bank notes. Section five alone dealt with forgery of private papers, and only that section required proof of "prejudice of another's right".

■ For more than a century, the statutory scheme framed in the Code of 1849 has remained essentially unchanged in form and substance. In every revision made by the General Assembly, "prejudice of another's right" or equivalent language has been written into only those sections of the forgery statutes defining forgery of private writings.[6] In no revision has any such language been included in those sections defining forgery of public records.[7]

■ Construing the seven sections of the current forgery article literally and strictly, we find that the article emphasizes legislative intent to continue that policy. Code § 18.2-172 provides that "[i]f any person forge any writing, other than such as is mentioned in §§ 18.2-168 [public documents] and 18.2-170 [currency], to the prejudice of another's right . . . he shall be guilty of a Class 5 felony."

---

[5] We reject Campbell's assertion that the court's "observation [in *Murry*] is an aberration . . . effectively overruled by every subsequent decision of this Court holding that prejudice is indeed an element of the forging . . . of the long list of instruments that appears in the 1819 statute". All of the cases Campbell cites in support of that assertion deal with the forgery of "other writings", not the forgery of public records.

[6] *See* Va. Code Ann. § 18.2-172 (Repl. Vol. 1988); Va. Code Ann. § 18.2-172 (Repl. Vol. 1982); Va. Code Ann § 18.2-172 (Repl. Vol. 1975); Va. Code Ann. § 18.1-96 (Repl. Vol. 1960); Va. Code Ann. § 18-26 (1950); Va. Code Ann. § 4489 (1942); Va. Code Ann. § 4489 (1936); Va. Code Ann. § 4489 (1930); Va. Code Ann. § 4489 (1924); Va. Code Ann. § 4489 (1919); Va. Code Ann. § 3737 (1904); Va. Code § 3737 (1887); Va. Code ch. 189, § 5 (1873); Va. Code ch. 193, § 5 (1860).

[7] *See* Va. Code Ann. § 18.2-168 (Repl. Vol. 1988); Va. Code Ann. § 18.2-168 (Repl. Vol. 1982); Va. Code Ann. § 18.2-168 (Repl. Vol. 1975); Va. Code Ann. § 18.1-92 (Repl. Vol. 1960); Va. Code Ann. § 18-22 (1950); Va. Code Ann. § 4484 (1942); Va. Code Ann. § 4484 (1936); Va. Code Ann. § 4484 (1930); Va. Code Ann. § 4484 (1924); Va. Code Ann. § 4484 (1919); Va. Code Ann. § 3733 (1904); Va. Code § 3733 (1887); Va. Code ch. 189, § 1 (1873); Va. Code ch. 193, § 1 (1860).

■ Unwilling to acknowledge the design and import of the statutes, Campbell invokes a decision of this Court which he says has "for the first (and only) time," decided that "prejudice to the rights of another is an element of forgery of public records." He cites *Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865 (1874). Therè, the trial court, which had refused one of the defendant's instructions containing that element, added it to another instruction. The principal question on appeal was whether a warrant book was a public record as defined in other instructions. This Court held that "there was no error in giving and refusing the instructions set forth in the first bill of exceptions." *Id.* at 885. It is true that the opinion commented that the instructions under consideration "declare in what consists the forgery of a public record". *Id.* at 880. However, while this Court held that the harm-or-prejudice issue was preserved at trial, nothing in the opinion suggests that it was raised on appeal by either party.

To give the decision in *Coleman* the interpretation Campbell urges is to assume that this Court ignored the scheme of the Code current at that time and that of all its predecessors, the opinions of this Court in *Murry*, *Powell*, and *Linton* cited above construing the Code of 1819, and the common law of England as pronounced in *Ward*. We make no such assumption, and to the extent *Coleman* fairly may be subject to the interpretation Campbell urges, that decision is expressly overruled.

■ We agree with the ruling of the panel of the Court of Appeals affirming the ruling of the trial court that harm or prejudice to the right of another person has never been and is not now an element of the crime of forgery of public records in this Commonwealth.[8] The Court of Appeals sitting *en banc* upheld those rulings; to that extent, we will affirm its judgment.

---

[8] Asserting what he calls "an additional, independent ground" in support of his position, Campbell argues that "the alteration to the docket sheet *could not*, as a matter of law, harm or prejudice the rights of another, for it lacked any legal capacity to do so." (Emphasis in original). "[T]he docket sheet," he says, "does *not* touch or impact tangible property rights [and] *cannot* be relied upon by others to their detriment . . . ." (Emphasis in original).

But Code § 18.2-168 is designed, not to protect property rights, but to protect the integrity of public records. The General Assembly, the author of public policy, has decided "as a matter of law" that forgery of *any* public record, for whatever reason, is a criminal offense. It is, therefore, immaterial whether a *particular* public record can be shown to have a special capacity to cause unique harm or prejudice to the rights of another.

## II. CROSS-ERROR

As we have said, our order granting the cross-error assigned by the Commonwealth in Campbell's appeal was conditioned upon our instruction that the parties address the question whether this Court has jurisdiction to adjudicate that assignment.[9]

In support of the affirmative, the Attorney General argues on brief that "[w]hen a criminal defendant appeals to this Court, he brings the entire judgment of the Court of Appeals before this Court for review, and there is no valid constitutional or statutory prohibition to assignment of cross-error by the Commonwealth." We disagree.

The source of the original and appellate jurisdiction of the courts of this Commonwealth is Article VI, § 1, of the Constitution of Virginia. The Constitution provides that "the Supreme Court shall, by virtue of this Constitution, have appellate jurisdiction . . . in cases involving the life or liberty of any person." *Id.* The Constitution grants the General Assembly provisional authority to determine appellate jurisdiction of Commonwealth appeals in particular criminal cases. Thus, "an appeal by the Commonwealth may be allowed in any case involving the violation of a law relating to the State revenue." *Id.* Under amendment ratified in the general election on November 4, 1986,

[t]he General Assembly may also allow the Commonwealth a right of appeal [from certain pre-trial orders] in felony cases . . . [provided the appeal is pursued] before a jury is impaneled and sworn . . . or, in cases tried without a jury, before the court begins to hear or receive evidence or the first witness is sworn . . . .

*Id.*

However, the Constitution expressly mandates that "[n]o appeal shall be allowed to the Commonwealth in a case involving the life or liberty of a person". *Id.* That provision, first included as section 8 of the Bill of Rights and, later, as section 88 of the 1902 Constitution of Virginia, was designed "to insure that in a criminal prosection, where a man's guilt or innocence of the charge made

---

[9] That question was not resolved in *Martinez v. Commonwealth*, 241 Va. 557, 403 S.E.2d 358 (1991), because the Commonwealth withdrew its assignment of cross-error at the bar of this Court. *Id.* at 559 n.2, 403 S.E.2d at 359 n.2.

against him is at issue, he may not 'be put twice in jeopardy for the same offense.' '' *Smyth v. Godwin*, 188 Va. 753, 763-64, 51 S.E.2d 230, 235, *cert. denied*, 337 U.S. 946 (1949).

The final sentence in Article VI, § 1, vests the legislature with further power to determine the original and appellate jurisdiction of the courts of the Commonwealth, but only ''[s]ubject to the foregoing limitations''. The General Assembly has exercised that power but, always, strictly in accord with specific constitutional constraints. For example, Code §§ 17-116.08 and 19.2-317 grant the Commonwealth an appeal in a criminal case ''relating to the state revenue''; Code § 19.2-398 grants the Commonwealth the right in felony cases to appeal those pre-trial rulings expressly identified in Article VI, § 1. Significantly, no statute other than Code §§ 17-116.08 and 19.2-317 presumes to allow the Commonwealth an appeal from a conviction in ''a case involving the life or liberty of a person''.

The case at bar is such a case. Campbell was convicted of a criminal offense. Confirming the penalty fixed by the jury's verdict, the trial court sentenced him to confinement for three years in the penitentiary, the balance of the term to be suspended after he had served six months confinement in jail. In support of his assignment of cross-error,[10] the Attorney General, posing a question wholly distinct from the issue raised in this appeal, contends that the Virginia Court of Appeals erred in reversing Campbell's conviction and that ''the judgment of the circuit court should be affirmed.''

As the Attorney General observes, the Supreme Court of the United States has held that the double jeopardy clause of the federal constitution does not bar reprosecution following reversal of conviction on appeal. *Green v. United States*, 355 U.S. 184, 189 (1957). Yet, if we were to consider and uphold the Attorney General's assignment of cross-error, Campbell would lose the opportunity for acquittal in the new trial afforded him by the *en banc* judgment of the Court of Appeals. We think such a case is one ''involving the life or liberty of a person''.

It is true, as the Attorney General says, that ''[t]he Commonwealth filed no notice of appeal or petition for appeal, and is a party

---

[10] The assignment reads as follows:

The Court of Appeals erred in invoking the 'ends of justice' exception to Rule 5A:18 to review the propriety of an instruction on grounds never raised in the trial court, and to reverse Campbell's conviction in the absence of any possibility that the jury was misled by the instruction at issue.

in this Court only by reason of the defendant's appeal.'' Still, like every appellant, he entreats this Court to reverse a decision of a lower court.

> The Commonwealth of course cannot appeal criminal cases which do not involve State revenues. We will not in this appeal permit the Commonwealth to accomplish indirectly what it cannot do directly . . . .

*Hart v. Commonwealth*, 221 Va. 283, 290, 269 S.E.2d 806, 811 (1980) (citations omitted).

We hold, therefore, that the Attorney General's assignment of cross-error is tantamount to the appeal expressly excluded from appellate jurisdiction by the Constitution of Virginia.[11]

We will vacate that portion of our order that granted the assignment of cross-error and, as we said above, we will affirm the judgment of the Court of Appeals to the extent it upheld the ruling of the panel of that court challenged in this appeal by Campbell's assignment of error.

*Affirmed.*

JUSTICE LACY, concurring:

I concur in the majority opinion in this case and write simply to clarify my understanding of that holding regarding this Court's jurisdiction to consider the assignment of error raised by the Commonwealth.

The issue before this Court today is whether, in an appeal by a defendant from a decision of the Court of Appeals in a criminal case, this Court has the appellate jurisdiction to consider a cross-error raised by the Commonwealth. The answer to this question is straightforward and plain. The Constitution and statutes are the source of this Court's appellate jurisdiction. There is nothing in either which creates appellate jurisdiction of this type in this Court. Consequently, this Court does not have the jurisdiction to consider

---

[11] The Attorney General suggests that our decision in *Burgess v. Commonwealth*, 136 Va. 697, 118 S.E. 273 (1923), ''rejected the argument that the Commonwealth is prevented by the Constitution from bringing errors to the Court's attention in the course of a criminal defendant's appeal.'' We reject that suggestion. All we decided in *Burgess* was that the Commonwealth was privileged to call to this Court's attention the fact that the clerk of the trial court had made a clerical error in copying a portion of the original record on appeal.

the cross-error asserted by the Commonwealth. As there is no statute conferring such jurisdiction, we are not faced with resolving the validity of such a statute and I do not read the majority opinion to do so.