COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia


MELVILLE DEAN OLSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2462-06-1                      JUDGE LARRY G. ELDER
                                                       FEBRUARY 26, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Joseph Canada, Jr., Judge

Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Melville Dean Olson (appellant) appeals from his conditional pleas of guilty to charges of

murder, conspiracy to commit robbery, burglary, wearing a mask in public, two counts of

robbery, three counts of abduction with intent to extort money, and seven related counts of using

a firearm.  On appeal, he contends the trial court erroneously denied his motion to suppress

evidence he contended was obtained in violation of his Fourth and Fifth Amendment rights under

the United States Constitution and his co-extensive rights under the Virginia Constitution.  We

hold the trial court's denial of the motion to suppress was not error.  Thus, we affirm appellant's

convictions, subject to remand only for correction of a clerical error.[1]

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The transcript of the hearing on the motion to suppress reflects that appellant entered
conditional pleas of guilty in order to preserve his right to appeal the court's denial of his motion
to suppress.  However, the conviction and sentencing orders do not indicate the guilty pleas were
conditional.  Because the transcript reflects the conditional nature of the pleas and the
Commonwealth does not contend the pleas were not conditional, we remand the matter to the
trial court for the sole purpose of correcting the clerical error in the conviction and sentencing

I.

A.

SEIZURE UNDER THE FOURTH AMENDMENT

Generally, evidence obtained as the result of a search or seizure that violates a

defendant's Fourth Amendment rights is inadmissible at a criminal trial and must be suppressed.

E.g., Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081, 1090 (1961).

> In reviewing the denial of a motion to suppress evidence claiming
> a violation of a person's Fourth Amendment rights, we consider
> the facts in the light most favorable to the Commonwealth, the
> prevailing party at trial. The burden is on the defendant to show
> that the trial court committed reversible error. . . . We will review
> the trial court's application of the law *de novo*.

Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008). As to the facts, an

appellate court "'should take care both to review findings of historical fact only for clear error

and to give due weight to inferences drawn from those facts by resident judges and local law

enforcement officers.'" Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27

(2000) (quoting Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed.

2d 911, 920 (1996)).

Fourth Amendment jurisprudence recognizes three categories of police-citizen contact:

"(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon

specific, articulable facts, commonly referred to as Terry stops, see Terry v. Ohio, 392 U.S. 1, 88

S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (3) highly intrusive arrests and searches founded on

probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747

(1995). Consensual encounters "'need not be predicated on any suspicion of the person's

---

orders to reflect that appellant's convictions were based on conditional guilty pleas. See Tatum
v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 138 (1994); see also Code
§ 8.01-428(B).

involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). "'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.'" Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140 (1994) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980)).

"A seizure occurs when an individual is either physically restrained or has submitted to a show of authority." McGee v. Commonwealth, 25 Va. App. 193, 199, 487 S.E.2d 259, 262 (1997) (en banc). "Whether a seizure has occurred . . . depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." Id. at 199-200, 487 S.E.2d at 262.

> Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. The decision whether the encounter was consensual must be made based on the totality of the circumstances.

Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citations omitted). As the Virginia Supreme Court has recently observed in this context,

> There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated. Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record. The controlling inquiry [in determining whether a person was seized] is

the effect of such matters on a reasonable person in the light of all the surrounding circumstances.

Malbrough, 275 Va. at 171, 655 S.E.2d at 5.

Where a suspect is seized in violation of the Fourth Amendment and later confesses to the crime for which he was under suspicion, "the prosecution bears the burden of showing that the confession was not obtained by exploitation of the illegal action." Hart v. Commonwealth, 221 Va. 283, 288, 269 S.E.2d 806, 809 (1980); see Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441, 455 (1963). "Miranda warnings per se are insufficient to break the causal chain between . . . police conduct [illegal under the Fourth Amendment] and a [subsequent] confession." Hart, 221 Va. at 288, 269 S.E.2d at 809. "Thus, when a confession was made less than two hours after an illegal arrest, and there was no intervening event of significance, the close causal connection between the illegal detention and the confession rendered the confession inadmissible." Id. However, where a defendant who has been unlawfully arrested is released and returns voluntarily to make an incriminating statement, the taint of the unlawful seizure has been dissipated, and the statement is admissible under the Fourth Amendment. See Wong Sun, 371 U.S. at 491, 83 S. Ct. at 419, 9 L.Ed.2d at 457; see Hart, 221 Va. at 289, 269 S.E.2d at 810.

In determining whether evidence is derivative of the illegal act and, therefore, barred as "fruit of the poisonous tree," the question is "'whether[,] granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun, 371 U.S. at 488, 83 S. Ct. at 417, 9 L. Ed. 2d at 455 (quoting John M. Maguire, Evidence of Guilt 221 (1959)). "[E]vidence is not 'fruit of the poisonous tree' simply because 'but for' an unlawful search [or seizure] it would not have come to light." Commonwealth v. Ealy, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991) (quoting Segura v. United States, 468

- 4 -

U.S. 796, 815, 104 S. Ct. 3380, 3391, 82 L. Ed. 2d 599, 615 (1984)). Evidence is obtained by means "sufficiently distinguishable" to be admissible despite illegality if it is "evidence attributed to an independent source" or "evidence where the connection has become so attenuated as to dissipate the taint." Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).

> [These] limitations share the same rationale and are commonly applied together. For example, a search warrant . . . obtained subsequent to an unlawful search may be an independent source if such warrant . . . is not obtained by exploitation of the unlawful search or is so attenuated as to dissipate the taint of the unlawful search.

Ealy, 12 Va. App. at 755, 407 S.E.2d at 688. "There being no fixed formula [for making this determination], courts consider the amount of time between the illegal action and the acquisition of the evidence, the presence of intervening circumstances (like consent), and the purpose and flagrancy of the official misconduct." Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218-19 (2005) (en banc). Where the illegal activity of the police did not lead to discovery of evidence a party seeks to exclude, the exclusion of that evidence does not meet the purpose of the exclusionary rule, which is to deter future unlawful police conduct. See Johnson v. Commonwealth, 21 Va. App. 172, 175, 462 S.E.2d 907, 909 (1995).

Here, assuming without deciding that Detective Ray Pickell seized appellant in violation of the Fourth Amendment by waving his badge in the direction of appellant's slowly moving vehicle, causing appellant to stop, the evidence nevertheless supported the trial court's finding that the seizure quickly ended. See United States v. Seidman, 156 F.3d 542, 550 (4th Cir. 1998) (assuming without deciding government agent unlawfully entered defendant's residence but concluding constitutional violation was quickly "purged by the intervening independent acts of [defendant's] shutting the door behind [agent], motioning [agent] into his kitchen, and engaging [agent] in conversation for a substantial period of time"), cited with approval in Kyer, 45

Va. App. at 483-85, 612 S.E.2d at 218-19 (discussing Wong Sun "taint" analysis in context of consent to search following unconstitutional entry of home); see also Burns v. Commonwealth, 261 Va. 307, 324 n.11, 541 S.E.2d 872, 884 n.11 (2001) ("Even if the roadblock violated Burns' Fourth Amendment rights, we believe that any connection between the roadblock and the statements and physical evidence obtained from Burns was entirely dissipated . . . when he voluntarily spoke with [Officer] Gochenour at the site of the roadblock."). The nature of the intrusion, which occurred as appellant was driving "very slowly" through a cul-de-sac on a clear summer afternoon, was minimal. Detective Pickell did not activate a siren or flashing lights, with which his personal vehicle was not even equipped, and Pickell did not even get out of the car. Instead, Pickell merely waved his badge out the window as appellant drove toward him in order to get appellant's attention, after which only Detective Brian Seabold, whom appellant had met previously in the course of the investigation, got out of Pickell's Dodge.

As Detective Seabold, dressed in civilian attire, approached appellant's vehicle in a friendly manner without any additional display of authority, appellant exited his own vehicle, and said "Hello, Mr. Seabold." Detective Seabold addressed appellant by name, as well, and the two shook hands. After the two had engaged in this "cordial" greeting, Detective Seabold indicated an interest in talking to appellant at length. Appellant said "that would be fine" and responded similarly when Detective Seabold asked whether appellant was willing to go to Seabold's office to talk. Appellant then accepted Detective Seabold's offer of a ride to the police station. After appellant moved his car to the side of the road and locked it, Seabold again asked appellant "if he was sure he didn't mind going down there and talking to us," and "again, [appellant] said he didn't mind." Appellant consented to Detective Seabold's request to frisk him for weapons before he got into the car with them. After Seabold completed the frisk, appellant rode in the front seat with Detective Pickell, while Seabold rode in the back. Appellant

- 6 -

was not handcuffed or restrained in any way, and appellant and the detectives engaged only in "small talk" during the ride.

Upon their arrival at the police station, appellant was given the option of entering the front of the station by himself or riding to the back and entering with the officers from that direction, and he opted to accompany them inside through the rear of the building. He later opted to go to the rear of the building, where he knew he would have a police escort, in order to smoke rather than to go out in front of the building by himself. Finally, the detectives closed the interview room door only with appellant's consent, expressly told appellant he was not under arrest, and allowed him to take restroom and cigarette breaks as needed.

These circumstances, viewed in their totality, support the trial court's finding that appellant's confession was not the product of an illegal seizure. See Malbrough, 275 Va. at 171-72, 655 S.E.2d at 5 (discussing deference owed trial court's findings regarding whether a Fourth Amendment seizure occurred). Although not much time elapsed between the officers' stopping of appellant's vehicle and the subsequent contact, their stopping of the vehicle was minimally intrusive, and the evidence supported a finding that the subsequent behavior of the officers was wholly non-coercive and that appellant's interaction with them was entirely consensual. This same evidence supported the trial court's implicit finding that appellant's confessing during that interview was sufficiently purged of any taint that might have flowed from the original stop of his vehicle.

B.

CUSTODY UNDER THE FIFTH AMENDMENT

Appellant contends that he was in custody and had not been advised of his rights pursuant to Miranda when he made his first confession, rendering that confession inadmissible under the Fifth Amendment. He contends further that, pursuant to the holding in Missouri v. Seibert, 542

- 7 -

U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004), the confession he made after being advised of his rights also was inadmissible because it was tainted by the first, unwarned confession. In reviewing the ruling on the motion to suppress on Fifth Amendment grounds, just as with the Fourth Amendment, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below. Dixon v. Commonwealth, 270 Va. 34, 37, 613 S.E.2d 398, 399 (2005). Whether a person is "in custody" for purposes of one's rights pursuant to Miranda is a mixed question of law and fact. Thompson v. Keohane, 516 U.S. 99, 102, 116 S. Ct. 457, 460, 133 L. Ed. 2d 383, 388 (1995). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee, 25 Va. App. at 198, 487 S.E.2d at 261, but we review *de novo* the trial court's application of defined legal standards to the particular facts of the case, Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663, 134 L. Ed. 2d at 920. Because the evidence supports a finding that appellant was not in custody for Fifth Amendment purposes until after making his first confession, we hold no Fifth Amendment violation occurred and that his second confession was admissible.

The United States Supreme Court

> has long recognized that Miranda warnings are implicated only during a *custodial* interrogation. For that reason, "'[p]olice officers are not required to administer Miranda warnings to everyone whom they question,' and Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting [Oregon v.] Mathiason, 429 U.S. [492,] 495, 97 S. Ct. [711,] 714[, 50 L. Ed. 2d 714, 719 (1977)]) (citation omitted). The Court's decision in Seibert did not abrogate this long-standing principle. Thus, if a suspect gives an unwarned, voluntary confession *before* being taken into custody, a subsequent confession exacted after the suspect has been taken into custody and informed of his Miranda rights need not be suppressed.

Aldridge v. Commonwealth, 44 Va. App. 618, 641-42, 606 S.E.2d 539, 550-51 (2004) (first emphasis added) (citations omitted).

"Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Wass v. Commonwealth, 5 Va. App. 27, 29-30, 359 S.E.2d 836, 837 (1987) (quoting Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694, 706 (1966)). In determining whether a suspect is in custody when questioned, "[t]he totality of circumstances must be considered . . . . It is only when a suspect's freedom of movement is curtailed to a degree associated with formal arrest that the suspect is entitled to the full protection of Miranda." Id. at 32, 359 S.E.2d at 839. "The determination 'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" Harris, 27 Va. App. at 564, 500 S.E.2d at 262 (quoting Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293, 298 (1994)).

Appropriate factors for consideration include the nature of the surroundings in which the questioning takes place, "the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation." Wass, 5 Va. App. at 32-33, 359 S.E.2d at 839. Further,

> [a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant . . . to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action."

Stansbury, 511 U.S. at 325, 114 S. Ct. at 1530, 128 L. Ed. 2d at 300 (quoting Berkemer v. McCarty, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317, 335 (1984)) (other citations omitted). Thus, where communicated to the suspect, the focus of the investigation on that suspect, the existence of probable cause to arrest that suspect, and "'"the extent to which [the suspect] is confronted with evidence of guilt"'" are also relevant factors for consideration. Wass,

- 9 -

5 Va. App. at 33, 359 S.E.2d at 839 (quoting United States v. Bautista, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1982))).

The fact that the questioning occurs in a police station or other "coercive environment" does not automatically render the interrogation custodial and is simply another factor for inclusion in the analysis of whether a reasonable person would have believed he was in custody. See Mathiason, 429 U.S. at 495, 97 S. Ct. at 714, 50 L. Ed. 2d at 719. Applying this principle in Mathiason, the United States Supreme Court held a station house interrogation was not custodial where the accused, a parolee, came to the station voluntarily, despite the fact that he was told, falsely, that his fingerprints had been found at the scene of a burglary. Id.

The fact that an officer has "[i]nform[ed] a suspect that he is not in custody and is free to leave" is relevant in the analysis but "does not necessarily mean that [the suspect] is not in custody." Wass, 5 Va. App. at 34, 359 S.E.2d at 840. A statement that a suspect is not in police custody and is free to leave at any time "will not carry the day where it is, in effect, nullified by other police conduct." 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 6.6(d), at 531 n.53 (2d ed. 1999).

Here, the evidence, viewed in the light most favorable to the Commonwealth as recited in Part I.A., shows that appellant voluntarily accompanied the officers to the police station, that the detectives told appellant he was not under arrest and was free to leave, and that the behavior of the officers supported their statements.[2] Thus, the evidence supports a finding that appellant was not in custody when he made his first confession.

---

[2] Appellant does not contend that the officers made any other statements before he confessed that would have caused a reasonable person in his position to believe he was in custody. E.g. Wass, 5 Va. App. at 33, 359 S.E.2d at 839 (considering, *inter alia*, officers' statements that the investigation was focused on the suspect, that probable cause existed to arrest that suspect, and "'"the extent to which [the suspect] is confronted with evidence of guilt"'" (quoting Bautista, 684 F.2d at 1292 (quoting Booth, 669 F.2d at 1235))).

## II.

For these reasons, we hold the challenged evidence was obtained in a manner that did not

violate appellant's Fourth or Fifth Amendment rights and that the trial court's denial of

appellant's motion to suppress was not error.  Thus, we affirm appellant's convictions, subject to

remand only for correction of a clerical error.[3]

<u>Affirmed and remanded with instructions.</u>

---

[3] <u>See</u> <u>supra</u> footnote 1.